NOTICE
Decision filed 03/27/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210135-U

NO. 5-21-0135

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-503 |
| | ) | |
| GARY A. SMITH, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Vaughan and Justice Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: We vacate the judgment of the circuit court dismissing the defendant's postconviction petition where postconviction counsel rendered unreasonable assistance of counsel.

¶ 2     On July 13, 2017, the defendant, Gary A. Smith, filed a *pro se* postconviction petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The circuit court appointed counsel to represent the defendant on March 7, 2018. On July 16, 2020, the circuit court conducted a third stage evidentiary hearing on the defendant's postconviction petition and entered a written order denying the defendant's petition on August 6, 2020.

¶ 3     The defendant filed a motion to reconsider the circuit court's denial of his postconviction petition on September 2, 2020, which the circuit court denied on April 27, 2021. The defendant now appeals the judgment of the circuit court arguing that the circuit court erred in denying his

1

postconviction petition where the record demonstrated that the circuit court did not substantially comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012), before accepting the defendant's plea of guilty. The defendant further argues that postconviction counsel rendered unreasonable assistance of counsel and failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we vacate the judgment of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5      On January 12, 2017, the defendant pleaded guilty to one count of aggravated battery to a child in violation of section 12-3.05 of the Criminal Code of 2012 (720 ILCS 5/12-3.05 (West 2016)). At the plea hearing, the circuit court stated that the defendant was "charged in a Criminal Indictment on May 11th—on May 20th, 2016, with the offense of aggravated battery to a child, a Class X felony." The State informed the circuit court that the defendant's potential range of sentence on the charge was 6 to 30 years' incarceration within the Illinois Department of Corrections (IDOC), to be served at 85%, followed by 3 years' mandatory supervised release. The State further informed the circuit court that, upon the defendant's release from incarceration, he would be required to register with the Adult Violent Offender Against Youth Registry for a period of 10 years. Finally, the State informed the circuit court that both parties requested that the defendant be sentenced to a period of 17 years' incarceration, to be served at 85%.

¶ 6      The circuit court asked the defendant if he understood what "is supposed to happen to you this afternoon," and the defendant replied "Yes, sir." The circuit court then admonished the defendant as follows:

          "THE COURT: Before I can accept your plea, I must advise you of certain rights you'd be waiving.

2

You have a right to a trial in this matter. At that trial, [defense counsel] could cross examine witnesses. That would be before a judge or a jury. [Defense counsel] would have an opportunity to call witnesses in your behalf. She would also have an opportunity to cross examine witnesses called by the State. If you enter into this plea agreement, you're going to waive that right. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You have to speak up.

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to a lawyer. The Public Defender's Office has been appointed to represent you. Specifically, in this instance, [defense counsel] now represents you, having recently joined in with [prior counsel], who is no longer a member of the Public Defender's staff. Have you had sufficient time to counsel with the Public Defender's Office in this proceeding, [Defendant]?

THE DEFENDANT: I believe so.

THE COURT: And you're satisfied with their representation?

THE DEFENDANT: Yes, sir.

THE COURT: Finally, you have a right to remain silent; but once you enter into this plea agreement, you're going to waive that right, you're going to tell me that you committed this offense. Is that what you want to do, sir?

THE DEFENDANT: I have to state that?

THE COURT: You're going to have to admit that you committed this offense. Yes, you waive your right to remain silent, and you will have to acknowledge that you committed this offense.

3

THE DEFENDANT: Yeah. Yes."

¶ 7    The circuit court then inquired whether the defendant was on any medication, followed by the State setting forth the factual basis of the offense. The circuit court then stated:

"THE COURT: [Defendant], is that basically what happened, sir?

THE DEFENDANT: Basically.

THE COURT: The Court finds the factual basis exists, the plea would be knowing and voluntary, and the defendant has knowingly and voluntarily waived his rights."

The circuit court then accepted the defendant's plea of guilty and sentenced the defendant to 17 years' incarceration within the IDOC.

¶ 8    On February 13, 2017, the defendant, through counsel, filed a motion to withdraw his guilty plea and vacate his sentence (motion to withdraw). The defendant then filed a *pro se* motion to withdraw his guilty plea and vacate his sentence, which was filed stamped on March 27, 2017 (*pro se* motion to withdraw). On March 30, 2017, the circuit court entered an order denying the "motion to withdraw guilty plea" as "filed outside statutory time of filing."

¶ 9    On July 13, 2017, the defendant filed a *pro se* postconviction petition for relief pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2016)). In his *pro se* petition, the defendant alleged ineffective assistance of defense counsel stating that the defendant had requested defense counsel to file an appeal and that defense counsel had failed to do so; that defense counsel failed to fully inform the defendant of the potential sentence if he pleaded guilty, including the requirement to register as a violent offender against youth and the three years' mandatory supervised release; that defense counsel failed to advise the defendant that he could plead guilty but mentally ill; and that defense counsel failed to raise the issue of whether the defendant was mentally fit to stand trial.

¶ 10    On March 7, 2018, the circuit court entered an order directing the matter to stage two proceedings and appointed postconviction counsel to represent the defendant. On October 9, 2018, postconviction counsel filed an amended motion to withdraw the defendant's guilty plea and vacate his sentence (amended motion to withdraw). Within the amended motion to withdraw, the defendant alleged ineffective assistance of defense counsel in that defense counsel "pressured and coerced defendant into pleading guilty," failed to determine whether the defendant was mentally competent to enter a plea, stated to the defendant that he would be "screwed" if he did not take the State's offer, improperly requested a $5000 retainer fee, and failed to file a motion to withdraw after the defendant had requested him to do so.

¶ 11    The amended motion to withdraw also alleged that the defendant had insufficient time to consider the offer by the State, that he did not understand the charges against him, and that the circuit court failed to properly admonish the defendant at the time of his plea pursuant to the requirements set forth in Illinois Supreme Court Rule 402 (eff. July 1, 2012). Finally, the amended motion to withdraw the guilty plea alleged that the sentence imposed was excessive.

¶ 12    The State filed a response to the amended motion to withdraw on November 30, 2018. The State's response argued that defense counsel had filed a motion to withdraw on February 13, 2017, and that the defendant had filed a *pro se* motion to withdraw on March 27, 2017. The State's response then stated that the circuit court had denied the motion to withdraw on March 30, 2017, that the defendant did not allege in the amended motion to withdraw that he had requested his attorney to file a motion to withdraw within the 30-day time limit, and that the amended motion to withdraw "should be denied/quashed, having previously been denied."

¶ 13    On May 16, 2019, the defendant's postconviction counsel moved to withdraw as counsel for the defendant. The motion was granted and new postconviction counsel was appointed for the

5

defendant. Neither counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 14    On August 1, 2019, the circuit court entered an order deeming the defendant's amended motion to withdraw as a petition for postconviction relief (petition) and no objection was made to the circuit court's reclassification of the amended motion to withdraw. On September 30, 2019, the State filed a motion to dismiss the defendant's petition. The circuit court entered an order on December 4, 2019, denying the State's motion to dismiss and directing the matter to proceed to a third stage evidentiary hearing.

¶ 15    On July 16, 2020, the circuit court conducted a hearing on the defendant's petition. The defendant was present and represented by counsel. At the beginning of the hearing, the circuit court went through the various filings and indicated that "in a nutshell," the hearing was on a motion to withdraw and that "[w]e're having what would have happened way back in 2017 had there actually been a hearing on [the defendant's] motion to withdraw his guilty plea at that time," but in the context of a postconviction proceeding.

¶ 16    The first witness to testify at the hearing was the defendant's initial defense counsel (initial counsel), who stated that he had represented the defendant until initial counsel left his position with the public defender's office the during first week of January 2017.[1] Although no longer with the public defender's office, initial counsel stated that he was present and spoke with the defendant on January 12, 2017, prior to his plea. Initial counsel testified that he had introduced the defendant to his new public defender and "was encouraging [the defendant] to take the plea. We were also discussing him, or he and his family retaining me as private counsel." The defendant's initial trial counsel stated that he remembered advising the defendant that he was "not in a good position," but

---

[1]The common law record reflects a docket entry on January 5, 2017, appointing a new public defender to represent the defendant.

could not recall if he used the word "screwed" when advising the defendant regarding the plea agreement. Initial counsel also stated that he could not recall telling the defendant that he would spend the next 30 years in prison, unable to see his family, if he failed to take the plea agreement.

¶ 17     On cross-examination, initial counsel testified that he had been licensed to practice law for 2½ years at the time of the defendant's plea and had been a full-time assistant public defender for the majority of that time. Initial counsel further testified that during his representation of the defendant, he had met with the defendant at least 20 times, that he had discussed the evidence against the defendant, including the medical records and documents provided in discovery, and that he had discussed trial strategy with the defendant. Initial counsel testified that he believed that the defendant was fit to stand trial, that he never had the defendant evaluated for any issues with regard to mental fitness, and that he believed the defendant "clearly knew where he was, knew what was going on."

¶ 18     Next, the defendant's defense counsel at the plea hearing (plea counsel) was called and testified. Plea counsel stated that she had taken over the defendant's case from initial counsel, and that the first time she had met with the defendant was on the day that he had pleaded guilty. Plea counsel stated that the defendant's prior counsel and herself met with the defendant for several hours prior to the defendant pleading guilty. Plea counsel also stated that she recalled the circuit court giving the defendant his Rule 402 admonishments, including the right not to plead guilty, the right to testify, and the range of the sentence.

¶ 19     The defendant's father was also called to testify at the hearing. The defendant's father stated that he had spoken with the defendant during the time the defendant was incarcerated awaiting trial and had stated to the defendant not to worry, because he had spoken to initial counsel who had indicated that "there's a lot of holes" in the complaining witness's story, and that things

would be all right. The defendant's father testified that he had spoken with the defendant after the plea and that the defendant was "hysterical." The defendant's father testified that the defendant had stated that he had "no choice" regarding the plea agreement since defense counsel had advised the defendant that if he did not take the plea agreement, the defendant would spend 30 years in jail and never see his father alive again. The defendant's father stated that he was not aware that the defendant was going to plead guilty, or he would have never allowed him to do so.

¶ 20　　Finally, the defendant testified on his own behalf. The defendant stated that he believed his plea was involuntary because initial counsel told him he would never see his father alive, or his daughters grow up, if he did not take the plea agreement. The defendant stated that he had started to cry, and that he did not know what to do since he had not been aware of the plea offer until he had been brought to the courthouse that day. The defendant also testified that, just prior to the day that he had pleaded, initial counsel had contacted his father and asked for a payment of $5000 to continue representing the defendant as private counsel and that his father had informed initial counsel that he could not afford that amount. The defendant further testified that he had pleaded guilty based on the statements made to him by initial counsel and that he would not have pleaded guilty because the charges were a lie. On cross-examination, the defendant testified that he could not recall most of the admonishments that the judge had given at the plea hearing.

¶ 21　　The circuit court took the matter under advisement and on August 6, 2020, issued a six-page written ruling denying the defendant's petition. In the interest of brevity, we will set forth and discuss the relevant findings of the circuit court in our analysis below. On September 2, 2020, the defendant filed a motion to reconsider, and on April 27, 2021, the circuit court denied the defendant's motion to reconsider.

¶ 22    On appeal, the defendant raises the issue of whether the circuit court erred in denying his petition where the record demonstrated that the circuit court did not substantially comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012). The defendant further argues that postconviction counsel rendered unreasonable assistance of counsel and failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). We will first address the defendant's claim that postconviction counsel rendered unreasonable assistance of counsel and failed to comply with Rule 651(c), as we find this issue to be dispositive of this appeal.

¶ 23                                II. ANALYSIS

¶ 24    The Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a remedy to a criminal defendant who's federal or state constitutional rights were substantially violated in his or her original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from an underlying judgment but, rather, a collateral attack on the judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). As a collateral proceeding, a postconviction proceeding allows inquiry only into constitutional claims not presented at trial. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). "The scope of the proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated." *Id.*

¶ 25    The Act provides a three-stage process for the adjudication of postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, the circuit court independently assesses the defendant's petition, and if the court determines that the petition is "frivolous" or "patently without merit," the court can summarily dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To survive the first stage, "a petition need only present the gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 26    If a petition is not dismissed at the first stage, it advances to the second stage where an indigent petitioner can obtain appointed counsel and the State can move to dismiss it. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2016); *Edwards*, 197 Ill. 2d at 245-46. At the second stage, if the defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage where the circuit court conducts an evidentiary hearing on the merits. 725 ILCS 5/122-6 (West 2016); *Edwards*, 197 Ill. 2d at 246.

¶ 27    At the third stage, a defendant has the burden of proving a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The circuit court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought before the court" at the third stage evidentiary hearing. *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). The evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester*, 261 Ill. App. 3d 1075, 1078 (1994).

¶ 28    The circuit court appointed counsel to represent the defendant, and the right to counsel in postconviction proceedings is derived from statute rather than the Constitution. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). Thus, postconviction petitioners are guaranteed only the level of assistance which the statute provides. *Id.* That level of assistance has been defined by the Illinois Supreme Court to mean a "reasonable" level of assistance. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). We review *de novo* the question of whether postconviction counsel complied with Rule 651(c) (*People v. Profit*, 2012 IL App (1st) 101307, ¶ 17) and whether a defendant received a reasonable level of assistance in postconviction proceedings (*People v. Watson*, 2022 IL App (5th) 190427, ¶ 41).

¶ 29    One aspect of "reasonable" assistance at the second stage is compliance with Illinois Supreme Court Rule 651(c). See generally *People v. Carter*, 223 Ill. App. 3d 957, 961 (1992). Rule 651(c) requires a showing that postconviction counsel has consulted with the defendant to ascertain contentions of deprivation of constitutional rights, has examined the record of proceedings, and has amended the *pro se* petition, if necessary. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 30    There are two ways in which appointed counsel may comply with Rule 651(c): (1) counsel may file a certificate to show that the requirements of the rule were complied with or (2) the record as a whole may demonstrate that counsel complied with those provisions. *People v. Richmond*, 188 Ill. 2d 376, 380 (1999). In this matter, neither counsel filed a certificate to demonstrate that they had complied with Rule 651(c). As such, we will review the record as a whole to determine whether counsel complied with the provisions of Rule 651(c).

¶ 31    One requirement of Rule 651(c) is that postconviction counsel amend, if necessary, the defendant's *pro se* petition. There is no requirement that postconviction counsel amend a *pro se* postconviction petition. *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991). Nevertheless, Rule 651(c) does require that postconviction counsel make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017); see also *People v. Johnson*, 154 Il. 2d 227, 238 (1993) (statute contemplates that postconviction counsel will shape complaints into "appropriate legal form").

¶ 32    In this matter, postconviction counsel did not file an amended postconviction petition. Instead, postconviction counsel filed an amended motion to withdraw, that the circuit court later deemed a postconviction petition. Our review of the defendant's *pro se* petition demonstrates that the first claim made by the defendant was that his trial counsel had failed to file a notice of appeal

11

after the defendant had requested an appeal. Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) states that no appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the plea, files a motion to withdraw the plea of guilty and vacate the judgment. As such, in order to pursue a direct appeal, the first step would have been for trial counsel to file a timely motion to withdraw.

¶ 33    Trial counsel filed a motion to withdraw on February 13, 2017, and the defendant's *pro se* motion to withdraw was filed in the circuit court on March 27, 2017. The circuit court's order of March 30, 2017, denied the "motion to withdraw guilty plea" as "filed outside statutory time of filing"; however, both the motion to withdraw filed by counsel, and the defendant's *pro se* motion to withdraw, were filed within the statutory limits. In computing the 30-day time for filing, section 1.11 of the Statute on Statutes states that the time for filing "shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday ***." 5 ILCS 70/1.11 (West 2016); see *People v. Mason*, 2022 IL App (1st) 200387-U, ¶ 24.

¶ 34    The defendant pleaded guilty on January 12, 2017, and 30 days therefrom, excluding the first day and including the last day, was February 11, 2017. February 11, 2017, however, was a Saturday, thereby making the defendant's motion to withdraw due on February 13, 2017. As such, the motion to withdraw filed by counsel on February 13, 2017, was filed within the statutory time for filing. Further, under the mailbox rule, pleadings, including posttrial motions, are considered timely filed on the day the pleadings are placed in the prison mail system by an incarcerated defendant. *People v. Shines*, 2015 IL App (1st) 121070, ¶ 31. The defendant's *pro se* motion to withdraw contained a proof of service indicating that the motion had been placed in the prison mail system on February 10, 2017, and was thus, timely filed as well.

12

¶ 35    We can find nothing in the record to indicate that trial counsel did any type of follow up after the circuit court entered its order on March 30, 2017. Because of the circuit court's incorrect calculation of the timing of the motions, and trial counsel's complete lack of action after the circuit court's order, the defendant was deprived of a direct appeal.

¶ 36    Postconviction counsel filed an amended motion to withdraw but made no argument that the prior motions to withdraw were timely filed, nor did he allege ineffective assistance of trial counsel for the failure to challenge the circuit court's ruling on the motion to withdraw or the failure of trial counsel to file a direct appeal. The defendant made the necessary claim of trial counsel's failure to file a direct appeal in his *pro se* petition, but postconviction counsel did not make this claim in either the amended motion to withdraw or an amended postconviction petition. Thus, postconviction counsel eliminated this claim from being presented to the circuit court.

¶ 37    "In Illinois, there is a constitutional and statutory right to appeal a criminal conviction." *People v. Wright*, 311 Ill. App. 3d 1042, 1046 (2000). As such, we need not go any further into our analysis or review of the record since we find that postconviction counsel failed to amend the defendant's *pro se* petition into an appropriate legal form that was necessary for an adequate presentation of petitioner's contention on this claim. Instead of filing an amended postconviction petition, postconviction counsel used a legally inadequate procedural vehicle that did not properly bring the defendant's claims before the circuit court. Therefore, we find that postconviction counsel failed to comply with Rule 651(c) and rendered unreasonable assistance of counsel.

¶ 38    Where appointed postconviction counsel does not adequately fulfill his or her duties under Rule 651(c), remand is required and new counsel appointed. *People v. Addison*, 2023 IL 127119, ¶ 42. The defendant must be given an opportunity to replead his postconviction petition with the benefit of reasonable assistance of counsel. *People v. Turner*, 187 Ill. 2d 406, 417 (1999). Given

13

our finding on this issue, we will not address the defendant's remaining issue on appeal, and we express no opinion on the merits of the defendant's postconviction claims. Upon remand, the circuit court will have an opportunity to evaluate the claims in the defendant's postconviction petition once the defendant's new postconviction counsel has made any amendments to the petition that are necessary for an adequate presentation of petitioner's contentions.

¶ 39                          III. CONCLUSION

¶ 40    For the foregoing reasons, we vacate the St. Clair County circuit court's judgment of August 6, 2020, denying the defendant's petition for postconviction relief and remand for further proceedings consistent with this decision.

¶ 41    Vacated and remanded with directions.