NOTICE

Decision filed 04/11/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210259-U

NO. 5-21-0259

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 11-CF-28 |
| | ) | |
| RAYMOND E. MOSS, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's second stage dismissal of defendant's postconviction petition is affirmed where postconviction counsel provided reasonable assistance.

¶ 2     Following a jury trial, defendant, Raymond E. Moss, was convicted of two counts of criminal sexual assault in violation of section 12-13(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-13(a)(1) (West 2010)) and two counts of domestic battery in violation of section 12-3.2(a)(1) and (a)(2) of the Code (*id.* § 12-3.2(a)(1), (a)(2)). Defendant appeals the second stage dismissal of his postconviction petition. He argues his case should be remanded for further second-stage proceedings because his postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we disagree.

1

¶ 3                                    I. BACKGROUND

¶ 4      On January 25, 2011, defendant was charged, by indictment, with six counts: (1) criminal

sexual assault in violation of section 12-13(a)(1) of the Code (720 ILCS 5/12-13(a)(1) (West

2010)) by placing his finger in Y.H.'s vagina; (2) criminal sexual assault in violation of section

12-13(a)(1) of the Code  (*id.* § 12-13(a)(1)) by placing his finger in Y.H.'s anus; (3) domestic

battery in violation of section 12-3.2(a)(1) of the Code (*id.* § 12-3.2(a)(1)) after striking Y.H. on

the head and face; and (4) domestic battery in violation of section 12-3.2(a)(2) of the Code (*id.*

§ 12-3.2(a)(2)) after making physical contact of an insulting or provoking nature with Y.H., in that

after defendant inserted his fingers in Y.H.'s vagina and anus, he placed his fingers in Y.H.'s

mouth; (5) unlawful restraint in violation of section 10-3(a) of the Code (*id.* § 10-3(a)) by detaining

Y.H. against her will by not allowing Y.H. to leave a specific property located in Harrisburg, Saline

County, Illinois; and (6) unlawful restraint in violation of section 10-3(a) (*id.*) by detaining Rachel

Cline and not allowing her to leave the same property. On March 20, 2012, following a four-day

trial, the jury found defendant guilty of two counts of domestic battery and two counts of criminal

sexual assault of Y.H. The jury found defendant was not guilty of the two counts of unlawful

restraint.

¶ 5      On April 19, 2012, defense counsel filed a motion for a new trial. The motion alleged 19

errors by the trial court. On April 27, 2012, defendant filed a *pro se* motion for a new trial claiming

his trial counsel was ineffective. Defendant's motion contained 40 allegations that claimed trial

counsel was ineffective by (1) failing to request a special prosecutor because defendant and Terri

Blackburn (who was the ex-wife of previous chief judge and current State's Attorney Michael

Henshaw) had sex, consumed cocaine and marijuana, and were still friends, and the State's

Attorney made statements to the newspaper regarding defendant having photos of Henshaw

snorting cocaine and other drugs; (2) failing to advise the court that Assistant State's Attorney (ASA) Walker continued to leave documents out for jurors to see after being previously admonished for the same act; (3) failing to request a directed verdict at the close of the State's case as requested by defendant; (4) failing to secure a doctor or medical expert to review and analyze J.B.'s medical records; (5) failing to secure a doctor or medical expert to review Y.H.'s medical records; (6) failing to secure a DNA expert to review the evidence from J.B.'s sexual assault kit in the custody of the Illinois State Police; (7) failing to secure a DNA expert to analyze 93 pages of DNA evidence in this case involving J.B. and failed to request such expert in regard to J.B. and J.F.; (8) failing to notify the court when jurors saw defendant in handcuffs and shackles; (9) failing to secure an expert to test urine samples taken from J.B. at Hardin County General Hospital; (10) failing to notify the court that Kently Nowakowski was arrested for allegedly tampering with witness J.B. in this case even though the information was provided to counsel; (11) failing to require the State to disclose discovery before the start of the trial and failing to notify the court when it did not; (12) failing to request a mistrial due to the extremely prejudicial remarks by ASA Walker to the jury on March 9, 2012; (13) failing to secure phone evidence of records of texts and text messages to and from defendant's phone around the time of the alleged incident; (14) failing to secure evidence of phone records from J.B.'s phone; (15) failing to secure the phone records from Y.H.'s phone calls, texts, and messages to and from defendant; (16) failing to secure evidence of defendant's alibi defense provided by defendant; (17) failing to secure witnesses as provided to counsel by defendant; (18) making comments in opening statement that allowed for admission of Y.H.'s medical records; (19) failing to make ASA Walker use the word "allegedly" when asking questions and misleading the jurors; (20) failing to "inform Jurors and Court they shouldn't be

3

misled or confused during the selection process and trial";[1] (21) failing to inform the court of juror Quinn/State's Attorney Henshaw connections prior to start of trial; (22) failing to call witnesses and gather information in regard to Quinn/Henshaw connections; (23) failing to challenge the array of jury and show how black jurors were excluded from jury duty; (24) failing to request a jury pool from another county due to number of jurors' prejudicial remarks toward defendant; (25) failing to present evidence provided to counsel by defendant; (26) failing to present J.B.'s affidavit and other statements made by J.B. to other people; (27) failing to call witnesses given to the defense by the State in discovery, especially the ones whose testimony would have been beneficial to defendant; (28) failing to request mistrial due to the reckless and prejudicial conduct of ASA Walker toward defendant in front of the jury; (29) failing to request a computer expert to see how many other jurors could have been on their Facebook page; (30) failing to secure expert after statements revealed by prospective jurors Beal and Trowbridge; (31) failing to request court to secure prospective jurors' passwords and PINs if they had email address and all other electronic devices or communications; (32) failing to ask prospective jurors certain questions pertaining to computers and electronic messages provided by defendant to counsel prior to jury selection; (33) asking court to include motion for judgment notwithstanding (JNOV) the judgment filed on April 19, 2012; (34) asking court to include motion for new trial filed by counsel on April 19, 2012; (35) failing to dismiss entire jury panel due to misconduct by jurors and tainted jury pool; (36) failing to file a motion for a change of venue to receive trial by impartial jury; (37) failing to verbally request dismissal of jury panel due to contempt of court by misconduct of prospective jurors; and (38) failing to secure a jury of defendant's peers. Defendant further alleged that defense counsel

---

[1]We note that some of defendant's allegations are confusing and nonsensical. No explanation for these allegations were provided on appeal. Rather than ignore the perplexing allegations, we will quote them and consider them as best we can in conjunction with the issues raised on appeal.

4

was aware of false statements made to the court by certain jurors, including Quinn, Deidre Rakestraw, Beal, Trowbridge, Hill, Hise, and Strickland, and that defense counsel was aware of J.B./Nowakowski connection. Defendant further argued that the trial court erred by not dismissing the jury pool when defense counsel moved for such action. Defendant requested counsel be appointed to argue the motion.

¶ 6 On April 27, 2012, defense counsel filed an amended motion for a new trial. The amended motion included the same allegations in the first motion with one additional claim alleging that juror Rakestraw and the victim R.C. were friends on Facebook and the relationship was unknown to defendant at the time of *voir dire*.

¶ 7 On April 27, 2012, a copy of State's Attorney Henshaw's primary petition to run for public office was filed with Larry Quinn listed as the first voter signature and Jessica Quinn listed as the second. The circulator for the petition was Larry Quinn and he swore to the certifications on the petition.

¶ 8 The motions proceeded to hearing on April 27, 2012. The court conducted an informal *Krankel* hearing. It addressed defendant's written claims of ineffective assistance of counsel as well as others not raised in defendant's motion for a new trial that the court allowed defendant to raise at the hearing.[2] The court queried defense counsel about the allegation regarding his failure to call witnesses. Defense counsel stated there were a lot of names and they had application to other cases that were not before the court, so counsel chose not to call them. Counsel further stated that defendant wanted counsel to call every person defendant ever had sex with, but counsel did not believe that would be particularly beneficial to defendant and chose not to call them. Counsel

---

[2]Defense counsel addressed all the issues raised by defendant. Only those responses pertinent to the issues raised in this appeal are included.

5

also thought that numerous witnesses would create confusion and the jury would be concerned that defendant was trying to obscure facts and therefore did not call those witnesses either. When queried about his alleged failure to obtain a medical expert, defense counsel stated that while he received authority from the court to secure a DNA expert, the use of DNA was irrelevant because defendant acknowledged consensual sex and the charges at issue involved digital penetration. Counsel further stated that he did address J.B.'s medical records at the beginning of trial because they were not provided until the first day of *voir dire*. Counsel stated that he read the medical records and was not aware of anything significant requiring a medical expert. He stated there was a comment about smelling alcohol on J.B.'s breath, but counsel did not see what benefit could be derived from retaining an expert regarding that comment. As to the missing phone records, counsel stated that he was unable to obtain the actual text messages and at most would have received a printout of the numbers from where the texts came or were sent but nothing substantive could be obtained.

¶ 9    In response, defendant stated he had over 100 witnesses. These included five police officers, as well as a physician from Hardin County Hospital, who either performed tests or spoke with J.B. at the hospital that night, two people who were present the night he took J.B. home, and two people from a genetics company who spoke with defense counsel and the defendant about DNA.

¶ 10    Following the hearing, the court found it was not appropriate to appoint counsel and moved to address trial counsel's motion for new trial and JNOV. After hearing argument from counsel and the State, the court denied both motions, proceeded to the sentencing hearing, and ultimately sentenced defendant to 11 years for each criminal sexual assault conviction (served consecutively) and 4 years for each domestic battery conviction (concurrent to each other but consecutive to the

6

sexual assault convictions). On May 1, 2012, the trial court issued a written order denying both counsel's and defendant's motions for new trial and counsel's motion for JNOV.

¶ 11　On May 3, 2012, defense counsel filed a motion to reconsider sentence and a motion to stay sentence. On May 16, 2012, defense counsel also filed a motion to reconsider the court's ruling on the motion for a new trial. On May 24, 2012, the court denied all the motions.

¶ 12　On May 31, 2012, defendant filed a *pro se* motion for a new trial. In support, defendant argued that (1) defense counsel failed to have available the witnesses requested by defendant for the hearing on the motion for a new trial; (2) ASA Walker used false and perjurious testimony to obtain a conviction; (3) the court erred by not appointing counsel to argue defendant's *pro se* motion on April 27, 2012; (4) the court failed to take judicial notice of the requests in the *pro se* motion; (5) defendant "also didn't have the adequate time needed to prepare and argue [the] motion because the evidence was still coming to the defendant without defendant knowledge and the magnitude of such material for the defendant"; (6) the court appointed Lowell Tison to represent defendant, however, Tison was working at the State's Attorney's office as an ASA on the date of the alleged crime and a conflict existed; (7) ASA Jason Olson was defendant's previous attorney and therefore the case should have been given to a special prosecutor due to the conflicts; (8) upon review of the *voir dire* transcript, juror Larry Quinn lied to the court; and (9) defense counsel failed to secure a DNA expert to secure defendant's vehicle and inspect the car for any traces of blood or DNA. On June 4, 2012, the trial court denied defendant's *pro se* motion to reconsider.

¶ 13　Defendant appealed the court's judgment, and the Office of the State Appellate Defender (OSAD) was appointed. Notably, the issues raised by OSAD in the direct appeal did not include all the claims previously presented by defense counsel and defendant in their posttrial motions. The issues raised by OSAD included the State's amended indictment on the fourth day of the trial,

7

ineffective assistance of counsel claims related to Officer Murray's hearsay testimony and failure to object to the admission of J.B.'s medical records, the trial court's denial of trial counsel's request to replace the jury, the State's closing argument, and the court's award of fees on defendant's convictions. This court affirmed the trial court's judgment (*People v. Moss*, 2015 IL App (5th) 120240-U, ¶ 44) on April 29, 2015. The Illinois Supreme Court denied defendant's petition for leave to appeal on September 3, 2015.

¶ 14    From December 14, 2012, to May 23, 2016, defendant filed numerous motions in the trial court.[3] On June 24, 2016, defendant filed a *pro se* postconviction petition. The petition alleged that defendant's trial counsel's trial strategy was so unsound that counsel failed to conduct any meaningful testing of the State's case. In support, defendant cited the March 9, 2012, transcript and further cited the audio of the Illinois State Police interview with J.B. and claimed his counsel did not know it existed until defendant told him on March 2, 2012, at the hearing in open court. Defendant further alleged that his counsel's racial comment "to put a noose around petitioner's neck in closing arguments were extremely [in]flammatory, prejudicial, and bias" toward defendant who was African American. He further contended that the prosecutor's "drug dealer remarks" were "only missing the N word." Defendant claimed that trial counsel's decision to not call law enforcement witnesses to court on his behalf was "beyond disbelief." He further alleged ineffective assistance of counsel due to the failure to test the urine samples of J.B. and Y.H. and failed to question J.B. about her past drug abuse history to impugn her credibility. Defendant further claimed the State hindered his rights by not giving the defense Y.H.'s arrest records to challenge her credibility. Defendant argued the State allowed Y.H. to commit perjury at the grand jury

_____

[3]These motions have no relevance with the issues raised in this appeal and therefore are not addressed.

8

proceedings and the trial. He also claimed Y.H. never signed a release for the prosecutor and Dr. Donvito to discuss her medical records on a Sunday afternoon. Defendant claimed there was nothing turned over to the defense and the court should have barred Dr. Donvito's testimony and Y.H.'s medical records. The pleading further contended the prosecutor "also went and conducted interviews with [J.B.] and should have disclosed a discovery Report and NOT Been allowed to participate in these proceedings other than to testify Because of her actions." Defendant also claimed his counsel was unethical because he allowed his physician daughter, Sara, to review the medical records of J.B. and Y.H. and this action put defendant at a disadvantage. He claimed trial counsel told him that he was not going to do certain things because he was not paid enough. Defendant alleged that the inactions and ineffective trial counsel's failures occurred before, during, and after his trial. He claimed his trial counsel would not talk to him, provide him with the client file, or provide him with his trial notes despite repeated requests by defendant, and he claimed he was entitled to all three stages critical to his postconviction case and "this was the CORE of the 6th Amendment." Additional arguments related to juror bias and Facebook page writings by prospective jurors Beal and Trowbridge were addressed, along with the court's failure to dismiss the entire jury panel, take the panel's phones, or find the two Facebook writers in contempt of court. The defendant also took issue with the trial court proceeding on a *Krankel* hearing without allowing him time to prepare for a hearing.

¶ 15    Attached to the June 24, 2016, *pro se* postconviction petition were 48 additional claims that included (1) trial counsel failed to subpoena phone records, text messages, emails, and other phone list of numbers to and from the defendant's cell phone after defendant requested counsel secure text messages showing that Y.H. texted his phone and admitted she stole property and planned on returning the property and called him numerous times after the assault; and the phone

9

record transcript would have shown Y.H. lied to the court (defendant alleges that his trial counsel prepared a subpoena for defendant's phone records but never physically served it on the phone company); (2) appellate counsel failed to subpoena juror questionnaires and phone records just like trial counsel failed to do it; (3) trial counsel failed to interview, secure, and call witnesses on defendant's behalf at trial that would have proved defendant's truths and discredited the State's witnesses; (4) trial counsel failed to notify the court of his personal friendship and relationship with State's Attorney Michael Henshaw where they remodeled houses together; (5) trial counsel failed to notify the court of an extramarital affair between defendant and Terri Blackburn, who was the ex-wife of the former chief judge and current State's Attorney Michael Henshaw; (6) trial counsel failed to notify the court that defendant and Henshaw's ex-wife had consensual sex and consumed cocaine in the Henshaw home and failed to ask the court for a special prosecutor due to this conflict; (7) the State's Attorney made statements to The Disclosure newspaper staff about defendant having photos of Henshaw doing drugs; (8) State's Attorney Henshaw lied to the trial court about his relationship with Larry Quinn and should be held in contempt of court and charged with perjury; (9) juror Larry Quinn lied to the court and assured himself a seat on the jury to convict defendant for his personal friend, Henshaw; (10) neither the State's Attorney nor the court charged Quinn with perjury; (11) the jurors were on Facebook during the trial; (12) the court violated defendant's right to a fair and impartial trial when it did not dismiss the entire jury pool after the Facebook postings; (13) the court allowed the jury to retain their phones during jury deliberations; (14) the court was notified of juror misconduct by prospective juror Marsha Hill and failed to dismiss the jury pool; (15) the court was also notified by prospective juror James Hise of juror misconduct and ignored the honesty of that statement that indicated defendant had previously been to court on different charges; (16) the court was aware of the juror misconduct and proceeded to

10

trial with that jury pool; (17) more claims about prospective jurors Beal and Trowbridge; (18) juror Deidre Rakestraw, the sister of Sheriff Donald Brown, lied under oath when she stated she knew Rachel Cline from her childhood; they are on each other's Facebook pages; (19) trial counsel was ineffective for failing to not seek password and PIN access to prospective juror cellphones or laptops to see if they were posting Facebook messages about defendant's trial; (20) the court continuously violated defendant's due process and constitutional rights by not holding the tainted juror in contempt and having the jurors arrested and incarcerated for committing perjury and not following the court's orders; (21) the court was advised of at least seven jurors who committed violations; (22) trial counsel "was ineffective for not challenging the array of the jury pool and providing client with the prospective juror questionnaires especially due to the LARGE number of LAW ENFORCEMENT contained in this ONE jury pool and request of his client the petitioner in this cause"; (23) defendant remained wrongfully arrested, convicted, and imprisoned for an alleged crime he did not commit; (24) the trial court allowed ASA Walker to refer to defendant as a drug dealer with nothing in the record to support the statement; (25) ASA Walker conducted interviews with witnesses and made herself the thirteenth member of the jury; (26) defendant was basically called a black drug dealer to an all-white jury; (27) defendant's rights were violated as trial counsel said to the jury "let's hang Raymond," which was a reference to his race; (28) the trial court denied defendant a fair trial by allowing ASA Walker and trial counsel to conduct themselves in such a manner; (29) ASA Walker told the court that defense counsel was helping their case when he questioned Officer Mark Murray; (30) trial counsel failed to secure a doctor to go over the medical records of J.B. and counsel admitted this failure to the court; (31) trial counsel lied to the court about the circumstances of an affidavit being signed by J.B. at the March 2, 2012, hearing; (32) trial counsel failed to secure a DNA expert to go over DNA evidence from J.B. after the court gave

11

counsel permission to seek a DNA expert; (33) defendant requested to have the buccal swabs from J.B. tested for defendant's DNA; (34) defendant requested a *Krankel* hearing so he could call witnesses due to false misrepresentations and perjury from State's counsel, witnesses, and jurors; (35) the State's Attorney withheld exculpatory evidence in regard to Y.H.'s arrest record and witnesses from defendant that have now been obtained by defendant in FOIA request; (36) the State's Attorney's office was still withholding evidence of its misconduct and actions which would be shown when pending FOIA requests were received; (37) the jury pool saw defendant in handcuffs and shackles during the trial and trial counsel failed to notify the court about the initial incident and waited until after the trial to tell the court of the error; (38) trial counsel failed to get J.B.'s phone records to prove she was texting and talking to defendant by phone when she was taken home; (39) trial counsel failed to subpoena Y.H.'s phone records and ask the court to allow defense to run its own analysis of the urine sample; (40) the court allowed Dr. Donvito to speculate and lie to the jury and make statements not supported by any book, article, or report; (41) the court erred when it refused to allow defendant to go over the motion for a new trial; (42) the court erred by allowing the State to change the indictment on the last day of trial; (43) the court erred by allowing the dismissal of two black potential jurors; (44) the court erred when it made comments about how many law enforcement personnel were in the jury pool, which is now missing from the transcript; (45) the court erred in allowing J.B. to falsely testify against defendant and knew her statements were never proven, nor was defendant ever charged related to her case because police officers did not believe her; (46) the State indicating that J.B. and Y.H. did not know each other was false because J.B. told ISP that she knew about Y.H.'s charges; (47) trial counsel failed to play the ISP audio showing the connections; and (48) the court erred when it did not make the State stipulate that it induced J.B. and let Kently Nowakowski out of jail for J.B.'s false testimony

in defendant's case. Defendant attached exhibits to support his claim, requested counsel, and stated he sent sealed evidence to Judge Clarke and would present said evidence at hearing with court permission.

¶ 16    On September 7, 2016, the trial court issued a docketing order finding the majority of defendant's allegations were rebutted by the record, frivolous, or patently without merit, but the same could not be said of some allegations. The court appointed Patrick Duffy as defendant's postconviction counsel.

¶ 17    On February 21, 2017, Duffy filed an amended postconviction petition. The petition alleged three claims: (1) an equal protection violation stemming from the exclusion of two black potential jurors, (2) allegations that defendant was seen by the jurors in handcuffs, and (3) an allegation of a potentially tainted jury pool. Duffy also filed a memorandum in support of the petition and a Rule 651(c) certificate. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The matter was set for hearing on May 24, 2017.

¶ 18    On June 11, 2017, defendant requested the withdrawal of Duffy claiming he provided ineffective assistance by not communicating with him sufficiently. On June 22, 2017, Duffy moved to withdraw as attorney of record. On July 24, 2017, the court orally announced it would allow Duffy to withdraw. On August 14, 2017, the court issued an order allowing Duffy's withdrawal and appointed Todd Bittle as postconviction counsel for defendant. Bittle entered his appearance on August 16, 2017.

¶ 19    On June 1, 2018, Bittle filed a second amended postconviction petition. The petition "restate[d] and reaffirm[ed] all the matters and allegations" in defendant's *pro se* petition filed on June 24, 2016, as well as the matters and allegations in the amended petition filed by Duffy on February 21, 2017. Although largely duplicative of the reaffirmed prior petitions, the second

13

petition contained four counts and 11 additional claims of error. The four counts addressed (1) the removal of the only two black veniremen from the jury, (2) allowing the jury to see defendant in handcuffs and shackles, (3) defendant's jury was tainted, and (4) juror Quinn gave false and misleading answers during *voir dire*. The 11 claims of additional error stated trial counsel was ineffective because he (1) failed to subpoena phone records, text messages, emails, and other phone records; (2) failed to subpoena Y.H.'s medical records and secure expert testimony to rebut Dr. Donvito's testimony; (3) failed to secure a doctor or any medical licensed personnel to review J.B.'s medical records; (4) failed to attack J.B.'s credibility and elicit information concerning promises of leniency to Kently Nowakowski for J.B.'s testimony; (5) failed to object to the introduction of J.B.'s medical records at trial; (6) failed to object to hearsay testimony by Officer Murray about statements made by Y.H.; and (7) failed to interview, secure, and call witnesses on defendant's behalf at trial. The remaining claims contended (8) defendant was denied his right to effective assistance from the appellate defendant by failing to raise the claims of error by defense counsel listed above; (9) the court allowed the jury to have access to their cell phones and make telephone calls during deliberation; (10) the State's Attorney withheld exculpatory evidence in regards to Y.H., by failing to provide her arrest record and convictions that he later obtained in a FOIA request; and (11) the State's Attorney's office was still withholding evidence of its misconduct which defendant requested in a FOIA request and was waiting for the records to prove the allegation. Bittle also filed a Rule 651(c) certificate.

¶ 20    On September 6, 2018, the State moved to dismiss defendant's second amended petition. The motion contended that issues contained in defendant's second amended petition were raised and decided on direct appeal and therefore were barred by the doctrine of *res judicata*. The State also argued that issues contained in defendant's second amended petition could have been raised

on direct appeal and were also barred by the doctrine of waiver. Additionally, the State argued defendant failed to provide an affidavit or records in support of the claims and that one issue was not even proper in a postconviction petition. The State's motion noted that all of the claims in the first amended petition were specifically addressed in the second amended petition, however, some of defendant's claims in his *pro se* petition were not specifically addressed in the second amended petition.

¶ 21 On October 12, 2018, Bittle filed a response to the State's motion to dismiss and moved for leave to submit additional supporting documentation. The response argued that the doctrine of *res judicata* was relaxed when the waiver stemmed from the ineffective assistance of appellate counsel, citing *People v. Dalton*, 2017 IL App (3d) 150213, ¶ 31, and *People v. Flores*, 153 Ill. 2d 264, 282 (1992). The response also requested leave to include additional evidence, developed since the issuance of the appellate court's direct appeal decision, addressing one of defendant's claims. The additional evidence consisted of photographs from Steven and Julie Douglas's wedding at which juror Quinn was present. The argument alleged that juror Quinn was the son-in-law of Steven Douglas and State's Attorney Henshaw conducted Douglas's wedding.

¶ 22 On October 12, 2018, Bittle filed a motion to withdraw and a motion to continue (neither of which appear in the record), and the case proceeded to hearing on the pending motions. The court started with Bittle's motion to withdraw, and when questioned by the court, defendant affirmatively stated that he wanted Bittle to be withdrawn as his counsel. The court granted Bittle's motion in a docket entry. On October 16, 2018, due to the retirement of Judge Clarke, the case was assigned to Judge Goffinet.

¶ 23 On October 23, 2018, defendant filed a motion to preserve evidence of ineffective counsel's actions and requested counsel not be paid due to his misconduct. The petition related

15

solely to Bittle's representation of defendant. In the pleading, defendant stated that he "literally yelled at and cursed at" Bittle for "unprofessional conduct" that included (1) discussing attorney-client privileged issues with his secretary; (2) allowing his secretary to question the jurors "without the jurors being under oath and in open court"; (3) attorney Bittle contacting several jurors "without a subpoena or [defendant's] permission" because "defendant wanted jurors under oath during any questioning, and in open court and preserved on the record"; (4) Bittle's alleged representation of Steven Douglas, and allegedly telling Douglas that defendant previously submitted sealed photographs with the court that showed State's Attorney Henshaw performing Douglas's wedding at which juror Quinn was present; (5) Bittle's alleged lying about evidence for post-petition hearings; and (6) Bittle attaching photographs to the motion to supplement "without the permission or consent of defendant."

¶ 24    On November 5, 2018, Judge Goffinet reviewed the file and appointed Patrick Hunn as counsel for defendant. The postconviction petition was set for hearing on March 1, 2019. On February 15, 2019, attorney Hunn filed a motion to withdraw as attorney of record stating he had insufficient experience to handle the case. At the March 1, 2019, hearing, the court expressed its displeasure with the delay in Hunn's filing and lack of communication between Hunn and defendant in the interim. It then took the motion under advisement. Three days later, the court issued a docket entry granting the motion to withdraw, appointing Adam Lawler as postconviction counsel and providing Lawler with 45 days to review the file or file any amended pleading.

¶ 25    On September 9, 2019, defendant filed, *inter alia*, a motion for appointment of new counsel claiming that Lawler's firm was only interested in money, not his case. On September 12, 2019, Lawler filed a Rule 651(c) certificate that also listed the dates he met with defendant to discuss the substance of his postconviction petition, explain his rights, and consulted with defendant ensuring

16

the motion contained all necessary information. He further certified that he held phone conferences with defendant on six other days.

¶ 26     A hearing was held on October 18, 2019. At that time, the court granted defendant's motion for new counsel. The State asked the court if it could file a supplement to the motion to dismiss depending on what new counsel filed. In response, the court stated, "I'm not entirely sure I'm going to allow an amendment. We're on the second amended petition that was filed by appointed counsel. What I was going to do is allow time for them to see if there [are] any additional arguments they wish to raise, *** but I'm not granting them[,] at this point[,] a right to file a third amended petition. I'll have to wait to see what the request is and what the amendments are."

¶ 27     On November 15, 2019, the court appointed attorney Brian Trambley as defendant's counsel. On November 25, 2019, defendant filed a *pro se* motion to dismiss attorney Trambley due to a conflict. On December 9, 2019, Trambley filed a motion for leave to withdraw based on the same conflict. On December 13, 2019, the court granted the motion to withdraw.

¶ 28     On December 24, 2019, the court appointed Brandon Mayberry as counsel for defendant. At that time, the court set the case for a conference call on January 24, 2020. On January 27, 2020, Mayberry entered his appearance. On February 19, 2020, defendant moved to dismiss Mayberry because he had not yet heard from him. The case was called to hearing on June 19, 2020. The State argued for a dismissal of defendant's postconviction petition. Mayberry argued that the State's motion to dismiss was untimely, waiver should be excused, and new evidence was presented that should allow the claim to proceed to an evidentiary hearing. The court took the matter under advisement and asked the parties to present proposed rulings.

¶ 29     On July 2, 2020, defendant filed a motion for ineffective assistance of counsel related to attorney Mayberry and requested new counsel. The motion alleged, *inter alia*, that Mayberry had

17

only spoken with him twice during the representation. Defendant further alleged that Mayberry told him that he could not call witnesses or present any evidence at the court hearing.

¶ 30    On July 24, 2020, the court entered an order granting the State's motion to dismiss. The 12-page order analyzed all of defendant's claims and found the following claims waived: (1) the exclusion of two black jurors; (2) being seen in restraints; (3) the allegedly racist and tainted jury, failure to dismiss the jury pool, allowing the jury to maintain their cellphones; (4) trial counsel's failure to subpoena phone records of Y.H.; (5) trial counsel's failure to subpoena Y.H.'s medical records or secure expert testimony; (6) trial counsel's failure to secure doctor to review J.B.'s medical records; (7) trial counsel's failure to attack J.B.'s credibility; trial counsel's failure to secure and call witnesses at trial; (8) false statement of juror Rakestraw during *voir dire*; (9) ASA Walker's statements about defendant's being a drug dealer; (10) trial counsel's failure to obtain J.B.'s phone records; (11) trial court error in not allowing defendant to go over every allegation in his motion for new trial; (12) alleging State argument related to J.B. and Y.H. not knowing each being false; (13) failure of State's Attorney to disclose relationship with defendant; (14) State's Attorney's comments to newspaper; (15) denial of *Krankel* hearing; (16) Dr. Donvito's testimony; (17) trial court error regarding comment about law enforcement personnel in venire; (18) trial court error in allowing J.B. to testify falsely; (19) trial counsel's failure to play an audio recording to the jury; (20) trial court error in failing to make State stipulate about inducing J.B.'s testimony; and (21) failure to arrest and charge tainted juror with perjury. The court order also noted that some of those claims were missing supporting documentation. The court found the following claims were barred by *res judicata*: (1) the impartiality of juror Quinn; (2) trial counsel's failure to object to J.B.'s medical records; (3) trial counsel's failure to object to hearsay testimony of Officer Murray; (4) defendant's claim of actual innocence; and (5) the court allowing the State to amend the

18

indictment during trial. The court found the following claims were legally insufficient and failed to make a substantial showing of a constitutional violation: (1) allowing the jurors access to their cell phones, (2) State's Attorney failing to provide evidence of Y.H.'s arrest and convictions records, (3) trial counsel's failure to notify court of his friendship with the State's Attorney, and (4) State's Attorney lying about his relationship with juror Quinn and juror Quinn lying about his relationship with the State's Attorney.

¶ 31 The order also addressed the claims of ineffective assistance of trial and appellate counsel. The trial court noted trial counsel's performance before, during, and after the hearing. The court found many of the matters were rebutted by the record or matters of trial strategy. It further found that even if the actions revealed ineffective assistance, which it did not find, defendant failed to show a reasonable probability that he would have been found not guilty but for the errors he alleged were committed by trial counsel, because it "found the evidence against the defendant to be overwhelming as did the Appellate Court." As to the claim of ineffective assistance of appellate counsel, the court found fundamental fairness required it to relax the doctrines of waiver and *res judicata*. The court found the issues defendant claims should have been raised on appeal were either not supported by the record, were nonmeritorious, or were issues of trial strategy, and therefore defendant could not be prejudiced by appellate counsel's alleged inactions.

¶ 32 The court found the following issues were not cognizable as postconviction petition claims: (1) the State's Attorney's compliance with FOIA requests, (2) failure to charge juror Quinn with perjury, (3) ASA Walker's witness interviews, and (4) claim that trial counsel helped the prosecutor's case. The court also found the State's motion to dismiss was not untimely. Finally, the trial court addressed the newly discovered evidence and found it was not "newly discovered,"

was barred by the doctrine of *res judicata*, and even if it was not barred, failed to make a substantial showing of a constitutional violation.

¶ 33    On August 6, 2020, defendant filed a *pro se* motion for reconsideration of the court's decision regarding the postconviction petition. Defendant claimed the trial court did not review defendant's *pro se* motion filed by defendant against prior postconviction counsel Bittle on October 23, 2018. On August 10, 2020, defendant filed a supplemental motion to reconsider that included defendant's July 2, 2020, affidavit setting forth Mayberry's alleged ineffective assistance. On September 4, 2020, attorney Mayberry moved to withdraw alleging that defendant repeatedly questioned his legal decisions and told him he wished to discharge him.

¶ 34    The case proceeded to a hearing on September 25, 2020. The court took the motion to withdraw under advisement. On October 5, 2020, the court issued a docket entry order granting the motion to withdraw and appointed Danial Kay "solely to handle the motion to reconsider."

¶ 35    On June 11, 2021, attorney Kay moved to withdraw. Citing *People v. Malone*, 2017 IL App (3d) 140165, Kay argued there were no nonfrivolous claims to advance in defendant's reconsideration request. The motion addressed each allegation in defendant's reconsideration as well as the case law and found the cases upon which defendant relied were facially distinguishable and no serious argument could be made to support the multiple regressions of error after error required for a complete bypass of the waiver and *res judicata*. He classified the theory as frivolous and stated it could not be advanced in good faith. Kay filed his Rule 651(c) certificate on June 11, 2021.

¶ 36    On June 30, 2021, the case proceeded on defendant's motion for reconsideration. The court found the motion raised "no new evidence [or] law and fails to raise any issue the court misapplied

the law." The court denied defendant's motion and granted Kay's motion to withdraw. After filing a late notice of appeal, this court was directed by the supreme court to take the case.

¶ 37                                                    II. ANALYSIS

¶ 38    On appeal, defendant argues that the dismissal of his postconviction petition should be reversed, and the case remanded for new second-stage proceeding. Defendant's sole contention in support of this argument claims that his appointed postconviction counsel(s) failed to provide reasonable assistance and failed to comply with Rule 651(c).

¶ 39    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) allows a defendant to collaterally attack a final judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21. It "is not an appeal from the judgment of conviction." *People v. Tate*, 2012 IL 112214, ¶ 8. If the issue was already raised and decided on direct appeal, the issue is barred by *res judicata*; additionally, if the issue could have been raised on appeal, but was not, the issue is forfeited. *Id.* However, those principles may be "relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance by appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record." *People v. English*, 2012 IL 112890, ¶ 22.

¶ 40    The Act provides three stages for the advancement of a claim. *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.* "If the petition is not summarily dismissed, it must be docketed for further consideration in the second stage" at which time counsel may be appointed for an indigent defendant. *Id.* ¶¶ 18-19. At the second stage, the court decides if "the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If it does, the petition is advanced to the third stage for an evidentiary hearing. *Id.* If the petition does not make a

21

substantial showing of a constitutional violation, the petition is dismissed. *Id.* Here, defendant concedes his petition was insufficient, blames the deficiencies on his postconviction counsel, and argues that his appointed counsel failed to comply with Rule 651(c).

¶ 41 Counsel representing defendants in postconviction proceedings must provide a reasonable level of assistance. *Addison*, 2023 IL 127119, ¶ 19. In order to ensure this level of assistance is met, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) "outlines the specific duties of appointed counsel in post-conviction proceedings." *People v. Turner*, 187 Ill. 2d 406, 410 (1999). Rule 651(c) allows counsel to file a certificate stating they (1) "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "examined the record of the proceedings at the trial"; and (3) made any amendments to the *pro se* petition "necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The filing of a certificate creates a rebuttable presumption that reasonable assistance was provided. *People v. Smith*, 2022 IL 126940, ¶ 29.

¶ 42 Here, the issues raised require this court to determine if counsel complied with Rule 651(c) and provided reasonable assistance. Although seven attorneys were appointed to represent defendant during the postconviction proceedings, defendant limits his complaints to the services provided by attorneys Bittle, Mayberry, and Kay. In order to avoid confusion, we will start in the order of each's appointment.

¶ 43 Bittle was defendant's second appointed postconviction counsel. Following the submission of the 79-page second amended postconviction petition, Bittle filed a facially valid Rule 651(c) certificate. That filing created a presumption that reasonable assistance was provided. *Smith*, 2022 IL 126940, ¶ 29. As such, defendant must rebut the presumption of reasonable assistance. *Addison*, 2023 IL 127119, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 32). In order to rebut the

22

presumption, defendant may demonstrate, *inter alia*, "that postconviction counsel did not make all necessary amendments to the *pro se* petition." *Id.* "This includes making amendments that are necessary to overcome procedural bars." *Id.* (citing *People v. Perkins*, 229 Ill. 2d 34, 44 (2007)).

¶ 44 On appeal defendant argues that Bittle failed (1) to submit records regarding the text messages, phone calls, and emails; (2) to allege prejudice related to the lack of any expert reviewing J.B.'s medical records; (3) to name the witnesses who were not called during the trial or what they would have stated; (4) to explain the relevance related to the FOIA request from the Saline County State's Attorney's office; and (5) to provide affidavits related to the claims. As to these claims, we find the supreme court's decisions in *People v. Agee*, 2023 IL 128413, and *People v. Spreitzer*, 143 Ill. 2d 210 (1991), instructive.

¶ 45 In *Spreitzer*, the defendant claimed his postconviction counsel failed to provide evidentiary support to his postconviction petition in order to withstand a motion to dismiss. *Spreitzer*, 143 Ill. 2d at 220. The court held:

> " 'Where there is not a showing that sufficient facts or evidence exists, inadequate
> representation certainly will not be found because of an attorney's failure to amend
> a petition or, when amended, failing to make the petition's allegations factually
> sufficient to require the granting of relief.' " *Id.* at 221 (quoting *People v. Stovall*,
> 47 Ill. 2d 42, 46 (1970)).

¶ 46 In *Agee*, the court noted that postconviction counsel added evidentiary support and "petitioner has failed to show that any other evidence exists to support his claim." *Agee*, 2023 IL 128413, ¶ 56. *Agee* also cited *Stovall*'s finding "that we cannot charge counsel with incompetency for failure to introduce evidence not shown to be existing and available." *Id.*

23

¶ 47 Here, four of defendant's claims against Bittle contend that he failed to provide reasonable assistance because he did not include certain information or documentation for the second amended postconviction complaint. However, nothing in this record reveals, and no argument was made on appeal, that the missing documentation existed. For example, as to the records regarding the text messages, phone calls, and emails, the record reveals that the requested documents, *i.e.*, the actual text messages, were not available from defendant's phone carrier. Defendant was well aware of this because he attached the emails between his trial counsel and the carrier revealing the unavailability of those messages to his *pro se* postconviction petition. As such, it was impossible for Bittle to attach this documentation to the second amended postconviction petition.

¶ 48 Defendant also takes issue with Bittle's failure to name every witness that defendant wished to have testify at trial and what that testimony would have been. The transcript from the *Krankel* hearing revealed that defendant had over 100 witnesses and they included every person with whom he ever had sex. However, there is no indication that defendant provided the name of every person with whom he ever had sex, or what their testimony would reveal, to postconviction counsel. Notably, even if such information was provided, defendant would need to show how that information rebutted the presumption of reasonable representation stemming from Bittle's Rule 651(c) certificate. A facially valid Rule 651 certificate presumes counsel attempted to investigate the witnesses but the investigation "ultimately bore no fruit." *People v. Woods*, 2020 IL App (1st) 162751, ¶ 103. Here, no such showing was made by defendant.

¶ 49 Defendant goes to great length setting forth case law regarding the necessity of including affidavits in support of the postconviction claims. However, nothing in defendant's brief sets forth which claims required affidavits. In fact, the brief specifically states the opposite by conceding that, "The second amended petition included numerous attached exhibits, including transcript

excerpts, photographs, and affidavits from Mr. Moss." As nothing in defendant's brief argues that an affidavit was required for any specific claim, we can find no merit in this argument.

¶ 50    Defendant also argues that Bittle failed to explain the relevance related to the FOIA requests from the Saline County State's Attorney's office and claims the reference in the second amended petition to the exhibits failed to "explain or demonstrate what this *vague* allegation of misconduct is referencing" (emphasis in original). This argument is equally without merit because a newspaper article was attached to the original *pro se* petition—which was incorporated into the second amended postconviction petition—addressing defendant's FOIA request. The article revealed that the basis of the FOIA request was to confirm the police officers were acting under color of law at the time of defendant's arrest and that prejudice would arise if the officers were not. As such, we disagree with defendant's claim that the second amended postconviction petition's reference was "vague" or required any further support.

¶ 51    Finally, defendant argues that Bittle's allegation that trial counsel failed to secure a doctor or any medical licensed personnel to go over J.B.'s medical records failed to explain how defendant was prejudiced by this failure. We disagree. First, defendant's postconviction petition alleged that his "trial counsel['s] chosen trial strategy [was] so unsound that counsel fail[ed] to entirely conduct any meaningful testing of the State's case." Thereafter, defendant listed the numerous errors alleged by trial counsel. Second, Bittle restated and reaffirmed "all matters and allegations contained in the original" *pro se* petition for postconviction relief "filed on June 24, 2016" and then addressed those matters. Thereafter, Bittle classified defendant's petition as "death by 1000 cuts," noting that while "any one of those cuts might not prove fatal by itself, when taken together with all of the others, the 'totality of the circumstances' of those do prove fatal" and further stating that was "what happened herein."

25

¶ 52    Typically, claims for ineffective assistance of counsel are considered under the *Strickland* standard. See *Strickland v. Washington*, 466 U.S. 668 (1984). The Illinois Supreme Court adopted the *Strickland* standard (see *People v. Albanese*, 125 Ill. 2d 100, 105 (1988)) and summarized the standard as follows:

> "*Strickland* advances a two-component standard. The first component is to prove that counsel's representation fell below an objective standard of reasonableness such that the trial results were unreliable. Under the second component, the defendant must prove that he was prejudiced by the unprofessional conduct; that is, he must show, but for the attorney's unprofessional errors, the results of the trial would have been different." *Id.* at 106.

¶ 53    In addition to setting the above standard, *Strickland* noted that some circumstances were so likely to prejudice the accused that prejudice need not be shown and instead prejudice would be presumed. *Strickland*, 466 U.S. at 692. Three instances for which prejudice would be presumed were later established. See *United States v. Cronic*, 466 U.S. 648, 659-61 (1984). Those occasions included: "where (1) the defendant 'is denied counsel at a critical stage,' (2) counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance." *People v. Cherry*, 2016 IL 118728, ¶ 25 (quoting *Cronic*, 466 U.S. at 659-61).

¶ 54    Here, defendant raised the second *Cronic* exception by stating his counsel's chosen strategy was so unsound that counsel failed to "entirely conduct any meaningful testing of the State's case." Further, defendant's postconviction counsel adopted defendant's assertion of the *Cronic* exception in the second amended postconviction petition. While admittedly the exception has been classified as a "narrow exception" that "infrequently" applies (see *id.* ¶ 26 (citing *Florida v. Nixon*, 543 U.S.

175, 190 (2004)), such claim was likely necessary given the fact that this court previously found, when addressing defendant's claims of ineffective assistance on direct appeal, that defendant could not establish prejudice where "overwhelming evidence established defendant's guilt" (*Moss*, 2015 IL App (5th) 120240-U, ¶ 33).

¶ 55 Regardless, in this appeal, we are not asked to determine the validity of the claim of prejudice, but instead we are called upon to determine if postconviction counsel pled prejudice. Given the *Cronic* exception statement set forth in defendant's postconviction petition, that was adopted by postconviction counsel, we cannot find that prejudice was not alleged.

¶ 56 Therefore, although defendant claims that five issues raised in his second amended petition were insufficiently pled, he fails to sufficiently explain what postconviction counsel should have done differently. The above analysis confirms that Bittle complied with Rule 651(c) and made amendments to defendant's *pro se* petition necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Accordingly, we hold that defendant failed to overcome the presumption of reasonable assistance encompassed by the filing of Bittle's Rule 615(c) certificate and that we therefore cannot find that Bittle failed to provide reasonable assistance or failed to comply with Rule 615(c).

¶ 57 Defendant's second argument on appeal contends that Mayberry provided unreasonable assistance because he failed to amend the second amended postconviction "petition so that it contained the required information or explained its absence." Notably, Mayberry did not file a Rule 651(c) certificate. Therefore, we first consider *People v. Smith*, 2022 IL 126940.

¶ 58 In *Smith*, the defendant filed a *pro se* postconviction petition, and after the court failed to timely rule on the petition, it automatically advanced to second-stage proceedings and public defender, Avant, was appointed to represent the defendant. *Id.* ¶ 6. Avant filed a Rule 651(c)

certificate and indicated that an amended petition was not necessary for the presentation of the defendant's claims. *Id.* Before the hearing on the State's motion to dismiss, Avant left the public defender's officer and new counsel, Underwood, was appointed to represent the defendant. *Id.* ¶ 8. On appeal, the defendant argued that he was entitled to new second-stage proceedings where the record did not show Underwood complied with Rule 651(c). *Id.* ¶¶ 9, 12. The *Smith* court concluded, "Underwood was not required to independently demonstrate compliance with Rule 651(c) when all that remained for her to do upon assuming the role of second-stage postconviction counsel was orally argue against the State's motion to dismiss." *Id.* ¶ 38.

¶ 59    Here, Mayberry's role, just like Underwood's in *Smith*, was different from that of previously appointed postconviction counsel. Mayberry was not required to amend the second amended postconviction petition filed by Bittle, where Bittle filed a Rule 651(c) certificate, creating a presumption that defendant already received reasonable assistance of counsel in adequately presenting his claims and nothing rebutted such presumption. See *id.* ¶ 29. Defendant's argument has even less merit when the trial court specifically stated—three attorneys prior to Mayberry's appointment—that it was unsure it would allow for the filing of a third amended postconviction petition given the procedural stage of the proceedings. Further, as shown above, attorney Bittle's second amended postconviction petition was not deficient. Therefore, under these facts, we cannot find that Mayberry's failure to amend Bittle's petition was unreasonable.

¶ 60    Finally, defendant argues that attorney Kay's representation was unreasonable. Again, we disagree. First, we note that the trial court appointed attorney Kay "solely to handle the motion to reconsider" filed by defendant following the second stage dismissal of his postconviction petition. Following the appointment, attorney Kay moved to withdraw arguing there were no nonfrivolous claims to advance on reconsideration. Second, we also note that attorney Kay filed a Rule 651(c)

28

certificate of compliance. As such, the presumption that attorney Kay provided defendant with a reasonable level of assistance applies (see *People v. Custer*, 2019 IL 123339, ¶ 32), and defendant must rebut the presumption afforded to the Rule 651(c) certificate.

¶ 61     On appeal, defendant complains that Kay's motion to withdraw only addressed the allegations in the *pro se* motion to reconsider and *pro se* supplemental motion filed on August 6, 2020, and August 10, 2020, respectively. Defendant argues that Kay was required to also address all the allegations in the second amended postconviction petition and failed to explain why they lacked merit. In support, defendant relies on *People v. Kuehner*, 2015 IL 117695, ¶ 27. In *Kuehner*, the court held that

> "where a *pro se* postconviction petition advances to the second stage on the basis
>
> of an affirmative judicial determination that the petition is neither frivolous nor
>
> patently without merit appointed counsel's motion to withdraw must contain at
>
> least some explanation as to why all of the claims set forth in that petition are so
>
> lacking in legal and factual support as to compel his or her withdrawal from the
>
> case." *Id.*

¶ 62     We find defendant's reliance on *Kuehner* unwarranted. The reason for the court's holding in *Kuehner* was because the trial court advanced defendant's *pro se* petition to the second stage after finding it set forth the gist of a meritorious claim, as opposed to *People v. Greer*, 212 Ill. 2d 192, 200 (2004), in which defendant's petition was advanced by default. *Kuehner* noted that the reason for this requirement was because "in such cases, appointed counsel bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect." *Kuehner*, 2015 IL 117695, ¶ 21. While there is no dispute that defendant's *pro se* petition was advanced by judicial ruling at the first stage, similar to that seen

29

in *Kuehner*, by the time attorney Kay was appointed, the court had already dismissed defendant's second amended postconviction petition. Kay did not request to withdraw based on the allegations in the second amended postconviction petition and, therefore, was not obligated to address why each allegation in said postconviction petition was without merit.

¶ 63    The pleadings at issue, solely for which Kay was appointed, were defendant's *pro se* motion for reconsideration and supplemental motion related thereto. As seen in Kay's motion to withdraw, and conceded by defendant on appeal, Kay addressed the issues set forth in both of defendant's pending *pro se* motions. Therefore, defendant's claim of error based on Kay's failure "to address all the allegations in the second amended postconviction petition and fail[ure] to explain why they lacked merit" with specificity must be denied. As shown above, Kay had no obligation to complete that task; his task was solely to evaluate and amend, if possible, defendant's *pro se* request for reconsideration of the dismissal of the postconviction petition.

¶ 64    Defendant's second claim of error related to attorney Kay stems from the alleged failures of Bittle and Mayberry to properly shape defendant's *pro se* postconviction claims. Here, defendant contends Kay provided unreasonable assistance "for failing to amend the motion to reconsider so that it addressed this failure by [defendant's prior] post-conviction attorneys." However, defendant provides no argument as to how Kay was to amend the motion to reconsider.

¶ 65    "Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *Greer*, 212 Ill. 2d at 205. Given our findings of reasonableness related to the representation by Bittle and Mayberry above, we cannot find it unreasonable that Kay declined to amend defendant's motion for reconsideration to allege additional deficiencies by Bittle and Mayberry related to their alleged failures in amending the second amended postconviction petition. Accordingly, we decline to find that attorney Kay provided unreasonable

30

assistance for failing to amend the motion to reconsider so that it addressed the prior failures of his postconviction attorneys.

¶ 66    As no further basis was presented regarding the trial court's dismissal of defendant's postconviction petition, we affirm the court's dismissal of the postconviction petition.

¶ 67                                III. CONCLUSION

¶ 68    For the foregoing reasons, we affirm the trial court's judgment.


¶ 69    Affirmed.