(No. 69629.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDWARD SPREITZER, Appellant.

*Opinion filed March 28, 1991.—Rehearing denied June 3, 1991.*

212

Charles M. Schiedel, Deputy Defender, of Springfield, and Charles W. Hoffman, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Edward Spreitzer, was indicted, along with codefendants Andrew and Thomas Kokoraleis, in Du Page County for the aggravated kidnapping and murder of Linda Sutton. His case was severed from his codefendants, and after the first phase of his trial he was convicted, after a bench trial, of both charges. A jury was empaneled, at the defendant's request, at the sentencing phase of his trial. The jury found that the defendant was eligible for the death penalty and that there were no mitigating factors sufficient to preclude the imposition of a sentence of death. The circuit court then imposed a sentence of death on the murder charge and a 60-year sentence for aggravated kidnapping.

On direct appeal, this court affirmed the defendant's convictions and death sentence, but reduced the term of imprisonment for aggravated kidnapping to 30 years. (*People v. Spreitzer* (1988), 123 Ill. 2d 1.) Thereafter the United States Supreme Court denied review of defendant's direct appeal. (*Spreitzer v. Illinois* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) He then instituted the present action under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*)

by filing a *pro se* petition for post-conviction relief in the circuit court of Du Page County. The State moved to dismiss the petition and, without an evidentiary hearing, the petition was dismissed and direct appeal to this court followed (107 Ill. 2d R. 651).

The defendant raises three issues: (1) the trial court erred in dismissing his post-conviction petition without a hearing on allegations that he had been deprived of effective assistance of counsel during a pretrial motion to quash his arrest; (2) he had been deprived of effective assistance by post-conviction counsel; and (3) he was deprived of equal protection of the law and his right to a fair and reliable death penalty determination because the trial judge failed to instruct the sentencing jury of the mandatory alternative sentence of natural life imprisonment.

The facts of this case are adequately set forth in this court's opinion on the defendant's direct appeal (*People v. Spreitzer* (1988), 123 Ill. 2d 1), and will be repeated here only where necessary. Following this court's affirmance of defendant's death sentence, he filed a *pro se* petition for post-conviction relief and the trial court appointed post-conviction counsel who filed an amended petition. The amended petition contained allegations of constitutional error, which, for the purposes of this appeal, included the assertions that the defendant had been deprived of effective assistance of counsel at his pretrial hearing to quash his arrest and at his death sentencing hearing, and that he had been denied a fair sentencing hearing by the failure of the trial court to instruct the jury that the mandatory alternative sentence to death was life imprisonment without parole.

The State subsequently filed a motion to dismiss the petition. The trial court heard oral arguments and later granted the State's motion. Following the dismissal of

the amended petition, the defendant appealed directly to this court (107 Ill. 2d R. 651).

Defendant initially contends that the trial court erred in dismissing, without an evidentiary hearing, his claim that he was deprived of his right to the effective assistance of counsel at the pretrial hearing on his motion to quash his arrest. He claims that he was prejudiced by his attorney's failure to investigate, locate, or present the testimony of witnesses who would have established the illegality of his arrest in this cause.

Prior to defendant's trial, his attorney filed a pretrial motion to quash his November 5, 1982, arrest on the grounds that the police lacked probable cause at the time defendant was taken into custody. The motion also sought to suppress statements that the defendant had made to the police as fruit of the unlawful arrest. The issue was whether the defendant was arrested by the police before or after he had made the incriminating statement which provided the probable cause for his arrest.

In support of his motion to quash, the defendant was the only witness called to testify. He testified as follows: that at 10:30 p.m., on November 5, 1982, he drove up to the rear of his mother's house in Chicago, and parked near her garage; that as he got out of his car, he was approached by Detective Thomas Flynn and his partner, Detective Dickonson; that the officers asked him his name and stated that they wanted to "bring him in" to answer some questions; that the policemen then pushed him against the car, patted him down and handcuffed him behind his back; that he was then placed in the back seat of the officers' unmarked squad car and driven to a police station; and that for the next five days, he was held in custody and questioned repeatedly.

In opposition to defendant's motion to quash, the prosecution called Detective Flynn, who testified as follows: that he had stopped the defendant on October 20,

1982, in a van that matched the description of a vehicle used in the mutilation assault of two prostitutes in Chicago; that these incidents were similar to the mutilation murder of a prostitute in Du Page County that was being investigated by Du Page County Detective Warren Wilkosz; that the van belonged to defendant's employer, Robin Gecht; that the defendant, Gecht and two others who had access to the van voluntarily went to the police station, where they were photographed for the purposes of a photo lineup to be shown to one of the assaulted victims; and that later that day, the defendant voluntarily appeared in a lineup in the victim's hospital room, after which he was allowed to leave.

Detective Wilkosz testified that he spoke with the defendant six days later, on October 26, and that the defendant said that he would be willing to take a polygraph examination. Wilkosz also stated that he again spoke with the defendant on November 5, 1982, and he agreed to meet him in Chicago at 4 p.m. that day to take the polygraph exam.

Detective Flynn further testified as follows: that when the defendant failed to show up on November 5 for the examination, he and his partner went out looking for him; that at 7:45 p.m. he drove to defendant's mother's house, where he found the defendant; that the defendant explained that he had gotten tied up working on his car, but would still take the polygraph examination; that the defendant then voluntarily accompanied him to a police station to take the exam at 8 p.m.; that the defendant was neither handcuffed nor under arrest when they left his mother's house; that after the polygraph examination, the defendant voluntarily accompanied him to another police station for further questioning; and that during the later questioning, the defendant admitted his involvement in the unsolved homicides and was placed under arrest. After hearing the evidence, the

trial court then denied the defendant's motion to quash, holding that the defendant was not arrested until after he had made incriminating statements to the police which provided the probable cause for his arrest.

In his amended post-conviction petition, the defendant claimed that, prior to the hearing on his motion to quash, he told counsel that neighbors of his mother had seen the "arrest," and had seen him handcuffed when he was at his mother's house. He also claimed that his pretrial counsel never attempted to identify these neighbors and interview them to determine whether they would corroborate his testimony that he was arrested and handcuffed at his mother's house. In support of the allegations that there were witnesses to his "arrest," he attached an unsworn statement of Marcella Rudnick, who lived two houses away from defendant's mother. In her unsworn statement (written by post-conviction counsel's investigator), Mrs. Rudnick stated:

"I was in the living room window which faces South looking out at the street. It was early afternoon, the weather was clear and sunny. I saw Edward Spreitzer standing in the street handcuffed to the driver side door post of a police car parked in front of his house. He was alone, no police were in the area that I could observe. He appeared to be calm and uninjured from my view which is two houses West of his.

I watched him for approximately five minutes, then left the window. The last I saw of him was as I stated above.

/S/ Marcella Rudnick 7-25-89"

At the hearing on his post-conviction petition, the defendant argued that pretrial counsel's failure to investigate and locate Rudnick prevented the trial court from hearing testimony that would corroborate his version of what occurred on November 5, 1982, and therefore deprived him of effective assistance of counsel. In response, the State argued that the statement was vague,

ambiguous and contradicted by the record. Thus, the State claimed that there may have been good reason not to call Rudnick as a witness. The trial court held that Rudnick's statement did not provide a sufficient basis to support the defendant's allegations that he had been denied effective assistance of counsel.

"In order to prevail under the [Post-Conviction Hearing] Act, the defendant must establish a substantial deprivation of his rights under the United States Constitution or the Constitution of Illinois." (*People v. Caballero* (1989), 126 Ill. 2d 248, 258-59.) There is no entitlement to an evidentiary hearing on a post-conviction petition unless the allegations of a defendant are supported by the trial record, accompanying affidavits, and make a substantial showing that a defendant's rights have been violated. *People v. Gaines* (1984), 105 Ill. 2d 79, 91-92.

A defense counsel's representation is deemed to be constitutionally defective when it is shown: (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;] *** [and (2)] that the deficient performance prejudiced the defense." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

This court has stated:

"The standard for assessing claimed deficiencies in an attorney's performance is that of 'reasonably effective assistance' which is within the range of 'competence demanded of attorneys in criminal cases.' The standard is one of objective reasonableness, under 'prevailing professional norms.' [Citation.] To establish a deficiency, the defendant must overcome the strong presumption that the challenged action or lack of action might be the product of ' "sound trial strategy." ' " *Caballero*, 126 Ill. 2d at 260.

Even if a defendant can show a deficiency of counsel, he or she must still demonstrate prejudice. A defendant must show that the conduct of his counsel fell below the prevailing professional norms and must also show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.) The Court additionally noted that an ineffectiveness claim can often be disposed of upon a showing that a defendant suffered no prejudice from the claimed errors without deciding whether the errors constituted constitutionally ineffective assistance of counsel. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Defendant claims that he was substantially prejudiced by the lack of testimony of witnesses, such as his mother's neighbor Marcella Rudnick, at the hearing on his motion to quash arrest. In fact, he argues that if Rudnick actually had seen him in handcuffs, his arrest would have been quashed and his incriminating statements would have been suppressed, potentially altering the outcome of his subsequent trial and sentencing hearing.

Marcella Rudnick's statement is not persuasive in showing prejudice to the defendant. The statement is inconsistent with the defendant's testimony at the motion to quash arrest, and does not corroborate his version of the "arrest." Rudnick stated that she saw the "arrest" in the *afternoon*, while the defendant testified that it took place at *10:30 p.m.*. Rudnick also stated that she saw the defendant handcuffed to a *police car* in the *street*, while he testified that he was handcuffed in the *alley* and taken away in an *unmarked* car. Finally, she stated that she watched the defendant for *five minutes*, while he stated that he was taken away *immediately*. Defendant argues that the deficiencies in Rudnick's testi-

mony go towards her credibility, and can be attributed to the fact that it was made almost seven years after the "arrest"; thus a hearing is necessary to determine her credibility. The defendant argues that the delay in obtaining Rudnick's statement is a result of his trial counsel's incompetence, and that the statement would have been clearer, and more consistent with his testimony, if it had been taken earlier.

Defendant further argues that an evidentiary hearing is necessary to determine whether defense counsel's failure to call witnesses at the hearing on the motion to quash his arrest was made as a "tactical" decision, or as a result of inadequate investigation. However, the defendant virtually ignores the second prong of the *Strickland* test, which requires that the defendant show prejudice in order to obtain relief on an ineffectiveness claim. It is the opinion of this court that, regardless of whether or not defense counsel was ineffective in not investigating the witness, the statement of Marcella Rudnick does not provide the probability of doubt that could lead to a retrial. Since the defendant cannot show that he was prejudiced by defense counsel's alleged error, it was proper for the trial court to dismiss this issue without an evidentiary hearing.

The defendant also argues that he was deprived of the effective assistance of post-conviction counsel. He claims that his post-conviction attorney should have provided evidentiary support to his petition so that it could withstand a motion to dismiss. According to the defendant, post-conviction counsel was inadequate because he failed to give substance to the following allegations with specific evidentiary facts sufficient to grant relief. These allegations are that he had been deprived of effective assistance of counsel: (1) at the hearing on his motion to suppress statements; (2) at his death penalty hearing, by his attorney's failure to present mitigating evidence of

his psychiatric and neurological condition; (3) at his death penalty hearing, by the failure of his attorney to develop evidence of his mental retardation; (4) at his death penalty hearing, by the failure of his attorney to present mitigating evidence of his good behavior while incarcerated prior to his trial; and (5) that he was generally deprived of effective assistance of counsel throughout his trial and death penalty hearings.

According to Supreme Court Rule 651, an attorney appointed to represent an indigent person must consult personally, or by mail, with the defendant, examine the trial record and amend the post-conviction petition if necessary to adequately present any legal claims. (107 Ill. 2d R. 651(c); see also *People v. Slaughter* (1968), 39 Ill. 2d 278, 285.) However, there is no requirement that post-conviction counsel *must* amend a defendant's *pro se* petition. (*People v. Bowman* (1973), 55 Ill. 2d 138, 140.) This court has additionally held:

> "Where there is not a showing that sufficient facts or evidence exists, inadequate representation certainly will not be found because of an attorney's failure to amend a petition or, when amended, failing to make the petition's allegations factually sufficient to require the granting of relief." *People v. Stovall* (1970), 47 Ill. 2d 42, 46.

The record in this case shows that defendant's post-conviction counsel consulted with him, examined the record and conducted an investigation. The trial court even remarked:

> "I want to express thanks to both sides, especially Mr. Ekl [defendant's post-conviction counsel], for reviewing this matter. It is a very important case. He has done an excellent job on this matter."

Furthermore, post-conviction counsel did argue all of the points raised in the *pro se* and amended petitions to the trial court. Despite post-conviction counsel's vigorous argument, at the close of the hearing the trial court held:

"Count II is likewise inadequate to show ineffectiveness of counsel.

The appeal by the Defendant/Petitioner fully covers the sentencing procedure as it was applied to the Defendant/Petitioner, including a review of the various witnesses testifying on the Defendant's behalf, including the Defendant.

Count III, regarding ineffective counsel on motion to suppress, was also covered in the [defendant's direct] appeal, including the mental status of the Defendant.

Count IV again refers to trial counsel and mitigating evidence at sentencing and this was covered on [the defendant's direct] appeal.

Count V refers to Defendant's mental status and one Kent Mohr, a clinical psychologist. Again, this was referred to in the [defendant's direct] appeal and fully covered.

Count VI refers, again, to Defendant's mental status and was referred to specifically in the Illinois Supreme Court opinion [of the defendant's direct appeal]."

The reasons for the trial court's dismissal of the aforementioned counts of the post-conviction petition were *res judicata* and waiver. The petition was not dismissed due to a failure to support any of the claims of ineffectiveness of counsel with specific facts. An additional investigation, or addition of supporting documents to the record, would have been irrelevant to the issue of whether or not the allegations in the petition were *res judicata* or waived. See, *e.g., People v. Wilcoxen* (1970), 45 Ill. 2d 365 (at a post-conviction hearing, counsel ably argued defendant's claims, despite not amending the post-conviction petition, and, thus, was effective).

Defendant cites no evidence that post-conviction counsel could have found on the questions of waiver and *res judicata*; thus any evidence that could have been provided to support the ineffectiveness claim is simply not relevant and cannot be the basis of an ineffectiveness claim. (See, *e.g., People v. Gendron* (1969), 41 Ill.

2d 518, 520.) Since the defendant could not show that he was prejudiced in any way by his post-conviction attorney's conduct, his ineffectiveness-of-counsel claim fails.

Finally the defendant argues that he was deprived of equal protection of the law and his right to a reliable death penalty hearing as a result of the trial judge's failure to instruct the sentencing jury of the mandatory alternative sentence of natural life imprisonment. This point was raised and discussed on the defendant's direct appeal:

> "At the time of the sentencing hearing, it was the law of Illinois that the trial court was not required to instruct a jury on the alternative mandatory sentence of natural life. [Citations.] We have now held that such an instruction is required. (*People v. Gacho* (1988), 122 Ill. 2d 221, 260.) However, since the *Gacho* rule applies only prospectively to sentencing hearings conducted after the date of the decision in this case, *Gacho* is inapplicable, and the trial court's failure to permit evidence of sentencing alternatives was not error." *Spreitzer*, 123 Ill. 2d at 43-44.

"Rulings on issues that were previously raised at trial and on direct appeal are *res judicata*, and issues that could have been raised in the original proceedings, but were not, will be deemed waived." (*People v. Ruiz* (1989), 132 Ill. 2d 1, 9.) The defendant argues that *res judicata* should not apply because the instant claim is distinguishable from the one raised on appeal.

> "[T]he Post-Conviction Hearing Act was not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been a full review of the issues raised ***. This is so, even though the present petition attempts to change the character of the questions previously advanced and decided, by describing them in different constitutional terms." (*People v. Cox* (1966), 34 Ill. 2d 66, 67-68.)

Because this court addressed the propriety of the trial court's not tendering the mandatory alternative sentence

instruction on direct review of the defendant's case, the claim is now *res judicata.*

Defendant argues that resolution of this question relies on proof of instructions given at sentencing hearings in other death penalty cases. He asserts that the proof of the other cases was not in the record on direct appeal and, thus, the instant appeal cannot be barred on the grounds of *res judicata.* However, defendant offers no explanation for his failure to present the evidence of these other cases (which were decided prior to his direct appeal), on the initial appeal. Defendant's recharacterization of his claim as a deprivation of equal protection is clearly an attempt to relitigate this court's previous holding at his post-conviction hearing. This court has previously held that the defendant was not denied a fair sentencing hearing because the trial court failed to instruct the jury on the mandatory alternative sentence of natural life imprisonment. (*Spreitzer*, 123 Ill. 2d at 43-44.) We will not now allow a relitigation of the issue under a different guise.

For the reasons stated herein, the trial court's dismissal of defendant's post-conviction petition is affirmed. The clerk of this court is directed to enter an order fixing Wednesday, September 18, 1991, as the date on which the sentence of death entered in the circuit court of Du Page County is to be executed. Execution of defendant's sentence shall be by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). A certified copy of this order shall be furnished to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*