2024 IL App (1st) 221743-U

SIXTH DIVISION
May 17, 2024

No. 1-22-1743

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF

ILLINOIS FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 701402 |
| | ) | |
| ROGELIO OROZCO, | ) | Honorable |
| | ) | Michael Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The court erred in dismissing petitioner's postconviction petition at the second stage where postconviction counsel was ineffective.

¶ 2    Petitioner Rogelio Orozco appeals from the dismissal of his petition for postconviction relief at the second stage under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). Rogelio argues that he received ineffective assistance of postconviction counsel where counsel failed to amend his postconviction petition to adequately present his claims. We agree and

reverse and remand for proceedings consistent with this order.

¶ 3                                     BACKGROUND

¶ 4      Rogelio, Rogelio's brother Arturo Orozco, and Ignacio Alvarez were charged with the first-

degree murder of Julia Flores and the attempt murder of Nicholas Velasquez. Rogelio and Arturo

were jointly tried before a double jury. Arturo and Ignacio are not parties to this appeal. At trial,

Raymond Prusak represented Arturo and John Miraglia, an attorney in Prusak's firm, represented

Rogelio.  Arturo was convicted but Rogelio's trial ended in a mistrial after the jury was unable to

reach a verdict after three days of deliberation.  Rogelio's retrial began on November 12, 2003, and

both Prusak and Miraglia represented him. Rogelio was convicted on retrial and sentenced to 38

years' imprisonment for first degree murder and 20 years' imprisonment for attempt murder, to run

concurrently.

¶ 5      The relevant facts are outlined in our order affirming Rogelio's convictions on direct appeal.

On appeal, Orozco raised two issues:  (1) that trial counsel was ineffective for failing to request an

instruction on withdrawal; and (2) the trial court erred in failing to provide a definition of beyond

reasonable doubt to the jury during deliberations.  We affirmed. People v. Rogelio Orosco, a/k/a

Rogelio Orozco, No. 1-06-1371 (2007) (unpublished order pursuant to Supreme Court Rule 23).

¶ 6      Rogelio filed a *pro se* postconviction petition alleging that trial counsel's joint

representation of him and Arturo was a conflict of interest and amounted to ineffective assistance.

In addition, Rogelio alleged that trial counsel was ineffective for failing to investigate and consult

with him on the motion to suppress statements.

¶ 7      The petition was advanced to the second stage. Rogelio retained private counsel, Matthew

McQuaid, who filed an appearance in 2011. McQuaid filed an amended petition on September 5,

2019. The amended petition set forth three claims. First, it alleged that Raymond Prusak's joint

2

representation of Rogelio and Arturo at trial was an actual conflict constituting ineffective assistance. Rogelio's amended petition alleged that trial counsel never discussed or drafted any conflict waivers, made strategic choices for Arturo's benefit, should have known that the brothers would implicate each other, and failed to investigate his motion to suppress statements. McQuaid attached to the petition documents from the Attorney Registration and Disciplinary Commission (ARDC) showing that Prusak engaged in "a pattern of misconduct and use of inappropriate language to his clients and their families between May 2002 and June 2006." Prusak was suspended for his misconduct, as well as for providing ineffective assistance in a case where he jointly represented two defendants without disclosing a possible conflict of interest. The ARDC reports further showed that Prusak suffered from alcohol and drug dependencies.

¶ 8    With respect to the motion to suppress statements, McQuaid attached an affidavit from Orozco's sister, Maria Zizumbo. Maria averred that Prusak told her that "the reason [Prusak] was filing the motion [to suppress statements] was because he just wanted to see what the State was going to bring out in trial." Regarding Rogelio's allegation that his interrogation was recorded, Maria averred that Prusak told her that "he did not want to bring out anything in regards of the video cameras, because Arturo was the one with the video tape and he was not making the same allegations that Rogelio was making." Regarding trial witness Velasquez's identification of Rogelio, Maria averred that Prusak said he would not challenge the identification in a pre-trial motion because it "was going to look good on Arturo's case." Maria also averred that Rogelio had witnesses he wanted called both at the hearing on the motion to suppress statements and at Rogelio's second trial, but Prusak never called those witnesses.

¶ 9    The second allegation in the amended petition was that the State engaged in prosecutorial misconduct when it proceeded on factually contradictory theories that violated Rogelio's right to

due process. Third and finally, the amended petition alleged that the sentencing court did not fully consider Rogelio's juvenile characteristics in imposing its sentence thereby violating the proportionate penalties clause of the Illinois Constitution. McQuaid did not file a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) (postconviction counsel must (1) consult with the defendant to ascertain his or her contentions, (2) examine the record of the trial proceedings, and (3) make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions.").

¶ 10    The State moved to dismiss the amended petition. Prior to the hearing on the motion to dismiss, Rogelio filed a *pro se* motion to add the allegation that the handwritten statement he made in Rogers, Arkansas, was taken in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004). Rogelio alleged that after making several attempts to contact McQuaid and discuss amending the petition to include this claim, McQuaid told him that he would amend the petition to include this claim but ultimately did not. Rogelio also sought to have McQuaid removed as postconviction counsel and to proceed *pro se.*

¶ 11    During the hearing on the motion to dismiss, the court asked McQuaid what Prusak could have done differently at Rogelio's second trial related to the allegation of a conflict of interest. McQuaid answered, "Your Honor, I can't say that there is something that he should have done at the second trial."  Regarding the conflict of interest, the court said, "I don't see what the conflict is really." On the allegations about Prusak's drug and alcohol use, the court said, "I certainly didn't see anything either at the time of either of the trials or in the record that would indicate [Prusak] was impaired in any way." On the sentencing issue, the court said that pursuant to *People v. Buffer*, 2019 IL 122327, ¶¶ 48-54 (any sentenced imposed on a juvenile offender that exceeds 40 years is a *de facto* life sentence), Rogelio's 38-year sentence was "clearly not a life sentence." The court

granted the State's motion and dismissed the amended petition.

¶ 12    Rogelio then asked to address the court regarding his allegation of a *Seibert* violation, but the court refused unless it came through Rogelio's attorney. McQuaid told the court that he received Rogelio's filings about the *Seibert* violation but that he had not filed anything with respect to the claim.

¶ 13    McQuaid filed a notice of appeal. Rogelio filed a *pro se* motion to reconsider, asking the court to "reinstate his petition for post-conviction relief." The court found that it lacked jurisdiction to rule on Rogelio's motion to reconsider due to McQuaid's notice of appeal. Rogelio filed a separate notice of appeal.

¶ 14    On appeal, this court entered an order remanding the case for the circuit court to consider Rogelio's *pro se* motion to reconsider. On remand, the circuit court allowed Rogelio to file an amended motion to reconsider. In the amended motion, Rogelio argued that Pruzak's conflict of interest affected Rogelio's second trial based on Prusak's conduct relating to the motion to suppress his statement. Rogelio argued that Prusak failed to call Yanette Garduno at the hearing and did not allow Rogelio to testify, which denied the trial court the ability to make a credibility determination on Rogelio's claims. Rogelio also argued that McQuaid provided unreasonable assistance in violation of Rule 651(c). Furthermore, Rogelio argued that he had informed McQuaid that he did not want to pursue a *Miller*-based sentencing claim, and wanted to focus instead on a claim of sentence disparity between Rogelio and Ignacio Alvarez.  Rogelio claimed that McQuaid told him that he would amend the amended petition, but failed to do so and further failed to present the sentencing disparity argument at the hearing on the State's motion to dismiss. The circuit court denied the amended motion to reconsider. This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    Rogelio argues that he was denied effective assistance of postconviction counsel because McQuaid failed to comply with Supreme Court Rule 651(c) and failed to amend his postconviction petition to include claims that would have made a substantial showing of a constitutional violation. Specifically, Rogelio claims that McQuaid failed to shape into proper legal form his claim that trial counsel labored under a conflict of interest by jointly representing Rogelio and his brother Arturo. Rogelio alleges that Prusak made decisions that negatively affected his case beginning at the hearing on the motion to suppress his statements during the first trial. Rogelio claims that Prusak's strategy at the motion to suppress showed that Prusak's allegiance was with Arturo. Rogelio urges that Prusak's decision to elevate Arturo's defense over his at the first trial bled into his second trial and resulted in Prusak advancing defense strategies that were consistent with Arturo's defense but inconsistent with Rogelio's innocence. Furthermore, Rogelio claims that Prusak's defense strategy at his second trial was an attempt to insulate himself from an ineffective assistance claim by Arturo. Rogelio also asserts that McQuaid should have amended his petition to include the claim that his handwritten statement was made in violation of *Seibert*, 542 U.S. 600 (2004). Rogelio further argues that McQuaid failed to make the amendments necessary to adequately present his claim of an impermissible sentence disparity between Rogelio's sentence and the sentence of his co-defendant Ignacio Alvarez.

¶ 17    The Act establishes a three-stage method for petitioners to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). Rogelio's petition was dismissed at the second stage of proceedings, in which counsel is appointed to represent the petitioner if necessary, and the State is permitted to file responsive pleadings. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage of postconviction proceedings, "the circuit court

6

must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id.* at 246. "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The second stage of postconviction review tests the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 18 "The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations," as such determinations are made during the evidentiary third stage of postconviction proceedings. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). "An evidentiary hearing is only required when the allegations of the petition, supported by the trial record and accompanying affidavits, make a substantial showing of a violation of a constitutional right." *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 31. In reviewing the second-stage dismissal of a postconviction petition, this court generally reviews *de novo* the circuit court's decision. *Pendleton*, 223 Ill. 2d at 473.

¶ 19 There is no constitutional right to the assistance of counsel during postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. As a matter of legislative grace, however, the Act provides a right to a "reasonable level" of assistance. *Id.* A "reasonable level *** is significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *Id.* To guarantee a reasonable level of assistance, post-conviction counsel must comply with Rule 651(c), which requires counsel to (1) consult with the petitioner to ascertain his contentions; (2) examine the record of the trial proceedings; and (3) make amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions. *Id.*; see also Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Compliance with Rule 651(c) is mandatory, but substantial

compliance is sufficient. *Addison*, 2023 IL 127119, ¶21. We review *de novo* whether counsel substantially complied with Rule 651(c). *Id.*

¶ 20    Postconviction counsel "is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c) ***." *People v. Cotto*, 2016 IL 119006, ¶ 27. " 'The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule.' " *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 39 (quoting *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25). "If counsel fails to file a certificate of compliance with Rule 651(c), a reviewing court is not entitled to assume that counsel has complied with the rule; rather, there must be an explicit showing in the record that the rule's requirements have been met." *People v. Myers*, 386 Ill. App. 3d 860, 865 (2008). When the record does not show counsel's compliance with Rule 651(c), remand is required regardless of the petition's merits. *People v. Saurez*, 224 Ill. 2d 37, 47, 52 (2007). Postconviction counsel's noncompliance with Rule 651(c) may not be excused on the basis of harmless error. *Id.* at 51-52.

¶ 21    In this case, McQuaid did not file a Rule 651(c) certificate. Therefore, we do not presume that counsel complied with the rule. Rather, we look to the record for clear and affirmative evidence that counsel met with defendant, reviewed his contentions of error, examined the record of proceedings, and made any necessary amendments to the *pro se* petition.

¶ 22    Here, Rogelio does not dispute that McQuaid complied with the first two requirements of Rule 651(c). Rather, Rogelio argues that McQuaid failed to comply with the third requirement by failing to make amendments to his *pro se* petition necessary for an adequate presentation of his contentions. Rogelio cites *People v. Addison*, 2023 IL 127119, in support of his argument.

¶ 23    In *Addison*, 2023 IL 127119, ¶ 23, the petitioner filed a *pro se* petition raising 15 issues, 14 of which claimed ineffective assistance of appellate counsel for failing to raise certain issues on

appeal. Finding that the petitioner had alleged the gist of a meritorious claim, the trial court advanced the petition to the second stage and appointed counsel, who filed a Rule 651(c) certificate stating that she had made any amendments to the petitioner's *pro se* petition that were necessary to adequately present his claims. *Id*. ¶ 8.

¶ 24 Postconviction counsel filed an amended petition raising five claims, but omitted the defendant's prior *pro se* assertion that appellate counsel was ineffective for failing to raise those five claims on appeal. *Id*. ¶¶ 7-8. The State filed a motion to dismiss arguing that the claims petitioner raised in his amended petition were forfeited because they could have been raised on direct appeal. Postconviction counsel did not counter that argument. *Id*. ¶¶ 9-10. The court granted the State's motion finding that the petitioner had failed to make a substantial showing of a violation of constitutional right. *Id*. ¶12.

¶ 25 Addison appealed and argued that he received ineffective assistance of postconviction counsel because postconviction counsel had failed to amend his petition to include the ineffective assistance of appellate counsel claims. We agreed and reversed and remanded for further second stage proceedings. *People v. Addison*, 2021 IL App (2d) 180545, ¶ 29.

¶ 26 Our supreme court granted the State's petition for leave to appeal. The court observed the well-settled rule that a petitioner can avoid forfeiting claims that could have been raised on direct appeal by alleging that appellate counsel was ineffective for failing to raise them and recognized that the petitioner demonstrated that he understood this, as his *pro se* petition included an ineffective assistance of appellate counsel claim. *Id*. However, when postconviction counsel filed an amended postconviction petition, he "eliminated the necessary allegations that defendant had included in the *pro se* petition." *Id*. ¶ 25. Even when the State pointed out that the petitioner's claims were forfeited because they could have been raised on direct appeal, postconviction counsel

did not make a necessary, routine amendment to the amended petition to overcome forfeiture. *Id*. ¶ 25.

¶ 27    The *Addison* majority found that postconviction counsel failed to provide reasonable assistance because counsel identified arguable issues but failed to "make the necessary amendments to put the claims in their proper form." *Id*. Because all of the issues raised by postconviction counsel could have been raised on direct appeal, the court concluded "we are faced with the unusual situation in which postconviction counsel, in one significant sense, made the *pro se* petition worse by amending it." *Id*. *Addison* ultimately held that "[p]ostconviction counsel did not comply with Rule 651(c), because she failed to shape defendant's claims into proper form," and that, accordingly, the defendant had "rebutted the presumption of reasonable assistance that arose from postconviction counsel's Rule 651(c) certificate." *Id*. ¶ 44. In holding that a remand was required, the court relied on its well-established case law that a violation of Rule 651(c) requires a remand without consideration of the merits of the petition's claims. *Id*. ¶ 33 (citing *People v. Suarez*, 224 Ill. 2d 37, 47 (2007)).

¶ 28    Rogelio claims that similar to postconviction counsel in *Addison*, McQuaid violated Rule 651(c) when he not only failed to shape his claims into the proper form, but actually made his petition worse by failing to bring a claim of ineffective assistance of appellate counsel for not raising a conflict of interest claim on direct appeal, despite Rogelio raising that issue several times in his *pro se* petition.  In his *pro se* petition, Rogelio raised eight claims: (1) trial counsel was ineffective in that he labored under a conflict of interest because he simultaneously represented Rogelio and his co-defendant brother, Arturo; (2) appellate counsel was ineffective for failing to raise the issue of the State's knowing use of perjured testimony and for failing to raise trial counsel's ineffectiveness for his failing to object to the State's knowing use of perjured testimony;

(3) ineffective assistance of trial counsel for failing to investigate and consult with Rogelio when preparing the motion to suppress statements; (4) ineffective assistance of trial counsel for giving erroneous advice that caused Rogelio to reject a plea offer of 20 years' imprisonment; (5) ineffective assistance of appellate counsel for failing to raise the issue that the police and the State failed to preserve exculpatory evidence; (6) ineffective assistance of appellate counsel for failing to raise the issue of trial counsel's ineffectiveness for his failure to object to prosecutorial misconduct and for failing to raise the issue in a posttrial motion; (7) ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness at sentencing where trial counsel failed to object to the State's unfounded remarks; and (8) cumulative error. Rogelio appended 16 exhibits to the petition, including affidavits, transcripts and other documents in support of his allegations.

¶ 29    McQuaid filed an amended petition on September 5, 2019. The petition contained four claims that McQuaid determined were worthy of pursuing: (1) ineffective assistance of trial counsel in that trial counsel labored under a conflict of interest when he simultaneously represented Rogelio and his co-defendant brother, Arturo; (2) ineffective assistance of trial counsel for failing to investigate, and properly prepare with Rogelio for the motion to suppress his handwritten statement despite repeated requests made to counsel, which resulted in counsel filing a motion to suppress that was not accurate; (3) prosecutorial misconduct where the State deliberately withheld that a State's witness gave an entirely different version of events in his prior statements to police; and (4) Rogelio's sentence violated the eight amendment and the Illinois proportionate penalties clause. Although these were all issues that could have been raised on direct appeal, McQuaid included no claims of ineffective assistance of appellate counsel.

¶ 30    In addition, after McQuaid filed the amended petition, Rogelio mailed a *pro se* motion to supplement the petition with the *Seibert* claim. When Rogelio was initially unable to contact

McQuaid through several letters and phone calls, he sought discharge of McQuaid for failing to amend the amended petition to include the *Seibert* claim. Rogelio claimed that McQuaid told him "that he would move to amend the [post-conviction] petition to include the 'Seibert violation' " but never did so. After the State's motion to dismiss was granted, McQuaid acknowledged that he knew about Rogelio's *Seibert* claim:

> "McQUAID: I have spoken to Mr. Orozco over time. He did send a motion to the Court, I believe myself and [the State] received a copy, in regards to a supplemental issue of Missouri v. Seibert, which is something we did raise in regards to the motion to suppress. It is a Miranda after the statement issue, and it would fall under ineffective assistance of appellate counsel for not filing that issue on appeal. I didn't file that, Judge.
>
> THE COURT: I know you didn't."

¶ 31    There is no requirement that postconviction counsel must amend a *pro se* postconviction petition. *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991). But postconviction counsel must comply with Rule 651(c). Here, although McQuaid amended Rogelio's postconviction petition to include four claims, we find that he failed to comply with Rule 651(c) in that he failed to amend Rogelio's postconviction petition to adequately present his claims.  Like postconviction counsel in *Addison*, McQuaid here failed to make the necessary amendments to put Rogelio's claims in the proper form by failing to include the necessary allegations of ineffective assistance of appellate counsel that Rogelio had alleged in his *pro se* petition, making the petition worse. *Addison,* 2023 IL 127119, ¶¶ 24-25 (A petitioner who is asserting claims that could have been raised on direct appeal can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal); *People v Turner*, 187 Ill. 2d 406, 413 (1999).

¶ 32    We express no opinion on whether Rogelio's claims have merit.  *Addison* made clear that

"it is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651(c) by shaping the claims into the appropriate form." *Id*. ¶ 42.

¶ 33     Counsel's failure to comply with the requirements of Rule 651(c) requires us to remand this matter to the trial court for further proceedings. On remand, Rogelio is entitled to new counsel who, after complying with the responsibilities in Rule 651(c), shall file the required certificate and, thereafter, file an amended petition. *People v. Burns*, 2019 IL App (4th) 170018, ¶ 3.

¶ 34                                    CONCLUSION

¶ 35     For the reasons stated, the judgment of the circuit court is reversed and remanded for further proceedings consistent with this order.

¶ 36     Reversed and remanded.