2025 IL App (1st) 231256-U

SIXTH DIVISION
March 14, 2025

1-23-1256

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF

ILLINOIS FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 1723702 |
| | ) | |
| DEMETRIUS KEMP, | ) | Honorable |
| | ) | Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1     *Held*: Petitioner received ineffective assistance of postconviction counsel.

¶ 2     Petitioner Demetrius Kemp appeals from the dismissal of his petition for postconviction relief at the second stage under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). Kemp argues that he received ineffective assistance of postconviction counsel where counsel failed to review the trial record and amend his postconviction petition to adequately present his claims. We agree and reverse the circuit court's dismissal of Kemp's petition and remand for

1-23-1256

further proceedings consistent with this order.

¶ 3                                BACKGROUND

¶ 4      The following facts are taken from our order affirming Kemp's conviction on direct appeal.

*People v. Kemp*, No. 1-04-0334 (unpublished order pursuant to Supreme Court Rule 23) (September

30, 2005). According to the testimony at trial, on the afternoon of June 17, 2000, the victims John

Savarino and Patrick Galvin were working at their jointly owned used-car dealership in Blue Island,

Illinois, when Kemp, along with Jackie McGee and Oscar Patton, arrived at the dealership driving

a red Oldsmobile. Savarino testified that Kemp, McGee, and Patton expressed interest in buying a

car. Patton filled out a credit application in Galvin's office where he wrote his name, address, social

security number, and driver's license number. McGee and Kemp waited in the dealership's

showroom with Savarino, where Kemp sat down facing Savarino who was three feet away. Five

minutes later, Kemp asked if he could use the bathroom. Savarino testified that Kemp then emerged

from the bathroom with a gun and said: "You know what this is." Kemp demanded money and

ordered Savarino and Galvin to strip off their clothes in the bathroom. Kemp, McGee, and Patton

collected Savarino and Galvin's clothes and wallets, and Galvin's cell phone, and then used paper

towels to wipe their fingerprints from the scene. Savarino heard two voices, one suggesting cutting

the phone line while another said, "Let's get out of here." Savarino then heard Patton respond: "No,

he know my name." Patton then said, "Back up out of the washroom."

¶ 5      After Galvin backed out of the bathroom on his knees, Patton shot a single bullet through

Galvin's back and fled. Savarino put on his underwear, the only clothing left, and ran across the

street to get help. Police arrived, found Patton's credit application at the dealership, and arrested

Patton the next day using the information he wrote in the credit application. Police recovered

Galvin's cell phone from Patton and a vehicle identification card for a 1984 Oldsmobile Delta 88,

2

the same car used in the robbery. Police searched the Oldsmobile and recovered a used-car appraisal book that Savarino had at the time of the robbery.

¶ 6    Patton confessed to shooting Galvin during his interview with police. Police proceeded to a Mobil gas station near the crime scene and recovered various items belonging to Galvin and Savarino from a garbage bag in a dumpster. The items included Galvin and Savarino's clothes, Galvin's insurance card and business cards, photographs of Galvin's children, one of Savarino's credit cards, a bank receipt belonging to Savarino, Savarino's driver's license, and other miscellaneous items belonging to Galvin and Savarino. Savarino later identified Kemp, McGee and Patton in a police lineup.

¶ 7    At Kemp's trial, co-defendant McGee testified in exchange for the State's recommendation of a 14-year prison sentence for the robbery in this case and an armed robbery in another case, and five year's incarceration for two probation violations. McGee testified that he, Patton, and Kemp robbed the used-car dealership. Over defense counsel's objection, McGee testified that he gave a videotaped statement to Assistant State's Attorney (ASA) Ted Lagerwall implicating himself, Kemp and Patton in the robbery and murder of Galvin.

¶ 8    Defense counsel cross-examined McGee about the terms of his plea agreement and elicited testimony that the State told McGee it would consider dropping his murder charge if he testified truthfully about the robbery and repeated what he said "when [he] first got arrested." McGee testified that on the day of his arrest he knew that he was in trouble for the robbery and shooting, and that he gave a statement to help himself because he "didn't know [] better." On re-direct, McGee testified that he gave his statement voluntarily, told the truth, and that he did not have an agreement with the State to testify against Kemp or Patton when he made his statement.

¶ 9    The State requested a sidebar and asked the trial court to allow the introduction of McGee's

videotaped statement to the jury. The State argued that it needed to rehabilitate McGee because defense counsel's cross-examination of McGee implied recent fabrication and a motive to lie. Defense counsel responded that there was "no doubt that he made this statement or got the deal after the statement was made," and that publishing the videotaped statement to the jury would bolster his testimony. Defense counsel further stated that because McGee already had a motive to help himself by implicating others when he gave the statement on June 30, 2000, the statement would only bolster McGee's testimony and the videotape was not needed where it was clear that McGee accepted the plea deal after he gave the statement. Defense counsel told the court that his cross-examination did not imply that McGee recently fabricated his testimony, but that McGee had an incentive to implicate Kemp when he gave his statement. The State replied that defense counsel's assertions challenged the statement and put into question the circumstances under which McGee made it. The trial court ruled that defense counsel's cross-examination of McGee did not raise the issue of recent fabrication, and that the videotaped statement was not admissible. However, over defense counsel's objection, the court found that ASA Lagerwall could testify to confirm the existence of the tape and its accuracy, the transcript of the statement, that McGee knew his rights, that McGee chose to videotape his confession, that no promises were made and no deals were in place at the time of the statement, and that the statement implicated Kemp and Patton.

¶ 10     ASA Lagerwall testified that he spoke with McGee at the Blue Island police station on June 30, 2000, and advised McGee of his rights. McGee agreed to speak to him and give a videotaped statement about the armed robbery on June 17, 2000. McGee was not promised anything in exchange for his statement. ASA Lagerwall testified that McGee's statement implicated Patton and Kemp in the armed robbery and murder at the dealership. McGee was charged with first-degree murder and armed robbery. ASA Lagerwall reviewed McGee's videotaped statement and its transcript prior to

trial, and they accurately represented McGee's statement. McGee's conversations with the police and his earlier conversations with the ASA on June 30, 2020, were not recorded.

¶ 11    Joseph Ambrozich, a fingerprint specialist from the Illinois State Police, testified that Savarino's bank receipt and one of Savarino's credit cards, both of which were recovered from the Mobil gas station, contained Kemp's fingerprints.

¶ 12    Kemp testified at his trial. Under cross-examination, Kemp testified that he told ASA Lagerwall and members of the Blue Island Police Department that he had never been to Blue Island. He further testified that he was hosting a birthday party for his granddaughter at the time of the robbery and that he had not left the party that afternoon. Kemp claimed that Patton, McGee, and a third man name Randy Somerville arrived at his home at approximately 6:30 p.m. and that Patton showed him a number of credit cards, including Savarino's, which would explain why his fingerprints were later found on the card. Five other witnesses testified that Kemp was at his granddaughter's birthday party for the entire afternoon; however, none of the five witnesses corroborated the appearance of Patton, McGee, and Somerville at Kemp's house.

¶ 13    The jury found Kemp guilty of first-degree murder and armed robbery of Patrick Galvin and John Savarino. The court sentenced Kemp to 50 years in prison for Galvin's murder and imposed two concurrent 30-year sentences for the two armed robbery convictions.

¶ 14  On appeal, Kemp argued he was denied his right to present a defense when the trial court excluded evidence of a similar crime perpetrated by a different individual four days prior to the instant offense. Kemp also argued that the trial court abused its discretion by admitting his prior convictions without conducting a proper balancing test under *People v. Montgomery*, 47 Ill. 2d 510 (1971). The State argued that Kemp's concurrent sentences were void and the cause should be remanded with instructions to impose the required consecutive sentences. We affirmed Kemp's

conviction but remanded for resentencing.

¶ 15    At the first resentencing hearing, the circuit court ordered the sentences to run consecutively for a total of 80 years. Kemp then filed a *pro se* amended motion to reconsider the 80-year sentence, arguing that trial counsel was ineffective for failing to tell him he could receive consecutive sentences if convicted and claiming he would have pled guilty had he known of the consecutive sentencing. The circuit court ultimately imposed consecutive terms of 42 years for first degree murder and 9 years on each of the two counts of armed robbery with a firearm.

¶ 16    On appeal, Kemp argued the circuit court failed to rule on his complaint that trial counsel was ineffective for failing to explain that the sentences were required to be served consecutively. We affirmed the circuit court decision. *People v. Kemp*, No. 1-07-3061 (Unpublished order pursuant to Supreme Court Rule 23).

¶ 17    On January 18, 2008, while his sentencing appeal was pending, Kemp filed a *pro se* postconviction petition wherein he alleged that appellate counsel was ineffective for failing to: (1) argue that Kemp could not be found guilty of first-degree murder and felony murder based on a general jury verdict form; (2) the evidence did not prove him guilty beyond a reasonable doubt; and (3) he was denied a fair trial "when over [d]efense's objection, the trial [c]ourt allowed the [people] to present evidence of Jackie McGee's prior consistent statement, bolstering his credibility." Kemp's petition also alleged appellate counsel's ineffectiveness for failing to argue trial counsel's ineffectiveness for failing to: (1) request a jury instruction that Savarino's prior inconsistent statement could be considered substantively; (2) call impeachment witnesses; and (3) object to the State's closing and rebuttal arguments, which purportedly mischaracterized and misrepresented witness testimony. The circuit court did not rule on the petition within 90 days, so on March 10, 2010, the court advanced the *pro se* petition to the second stage.

¶ 18    Shortly thereafter, Assistant Public Defender (APD) Michaela Kalisiak appeared on Kemp's behalf. Kalisiak obtained the trial and appellate records and trial counsel's files, subpoenaed reports from the Blue Island Police Department, and filed a detailed motion for discovery and requested to subpoena witnesses. Kalisiak appeared in court on Kemp's behalf numerous times and each time gave the court an update on her efforts to investigate multiple new issues raised by Kemp, to obtain the names of witnesses Kemp wanted to call, and to locate and investigate those witnesses. Meanwhile, Kemp also filed and abandoned a motion to substitute counsel or proceed *pro se* and filed a complaint against Kalisiak with the Attorney Registration and Disciplinary Commission (ARDC), which was dismissed.

¶ 19    In August 2020, more than 12 years after Kemp first filed his postconviction petition, APD Jason Peterburs took over Kemp's case. On April 5, 2022, Petersburs filed an Illinois Supreme Court Rule 651(c) certificate averring that he communicated with Kemp by telephone and written correspondence, "examined the record of proceedings, including the common law record, report of proceedings, and any exhibits in the possession of the Clerk of the Circuit Court," and "examined" Kemp's *pro se* postconviction petition. Peterburs also requested leave to supplement Kemps's *pro se* petition, filing a "supplemental" postconviction petition on the same date. The supplemental 46-page petition asserted that trial counsel was ineffective for inviting McGee's prior consistent statement during cross-examination and not requesting a limiting instruction for Savarino's prior inconsistent statements, and that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on appeal.

¶ 20    On August 10, 2022, the State filed a motion to dismiss Kemp's petition arguing that his ineffective assistance of appellate claims were meritless because trial counsel was not ineffective. The State noted that at trial, there was a long side bar regarding McGee's prior consistent statement,

and that the court ultimately ruled that the State could not present the statement. A hearing on the State's motion was held on June 30, 2023. The circuit court ruled that Kemp did not make a substantial showing of a constitutional violation and granted the State's motion to dismiss Kemp's petition.

¶ 21    Kemp now appeals.

¶ 22                                                      ANALYSIS

¶ 23    The sole claim Kemp raises on appeal is that postconviction counsel was ineffective when he failed to amend his *pro se* petition to adequately present Kemp's challenge to the introduction of a prior consistent statement that bolstered McGee's credibility.   Specifically, Kemp argues that postconviction counsel failed to sufficiently review the record and failed to amend the petition to argue that trial counsel was ineffective for not properly objecting to the introduction of the prior consistent statement during McGee's direct examination by the State, and consequently appellate counsel was ineffective for failing to raise the issue on direct appeal.

¶ 24    The Act establishes a three-stage method for petitioners to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). Kemp's petition was dismissed at the second stage of proceedings, in which counsel is appointed to represent the petitioner if necessary, and the State is permitted to file responsive pleadings. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage of postconviction proceedings, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Id*. at 246. "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The second stage of postconviction review tests the legal sufficiency of the petition. *People v. Domagala*, 2013

IL 113688, ¶ 35.

¶ 25    "The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations," as such determinations are made during the evidentiary third stage of postconviction proceedings. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). "An evidentiary hearing is only required when the allegations of the petition, supported by the trial record and accompanying affidavits, make a substantial showing of a violation of a constitutional right." *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 31.

¶ 26    There is no constitutional right to the assistance of counsel during postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. As a matter of legislative grace, however, the Act provides a right to a "reasonable level" of assistance. *Id*. A "reasonable level *** is significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *Id*. To guarantee a reasonable level of assistance, post-conviction counsel must comply with Rule 651(c), which requires counsel to (1) consult with the petitioner to ascertain his contentions; (2) examine the record of the trial proceedings; and (3) make amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions. *Id*.; see also Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Compliance with Rule 651(c) is mandatory, but substantial compliance is sufficient. *People v. Addison*, 2023 IL 127119, ¶21. We review *de novo* whether counsel substantially complied with Rule 651(c). *Id*.; *People v. Frey*, 2024 IL 128644, ¶ 41 ("Both the scope of an attorney's duties under Rule 651(c) and an attorney's compliance with that rule are reviewed *de novo*."); see also *Pendleton*, 223 Ill. 2d at 473 (we review the second-stage dismissal of a postconviction petition *de novo*.).

¶ 27    Postconviction counsel "is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c) ***." *People v. Cotto*, 2016 IL 119006, ¶ 27. " 'The filing of a facially

valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule.' " *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 39 (quoting *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25). In this case, postconviction counsel filed a Rule 651(c) certificate that substantially complied with the requirements of Rule 651(c). Accordingly, we presume that postconviction counsel provided reasonable assistance (*People v. Custer*, 2019 IL 123339, ¶ 32), and Kemp bears the burden to rebut this presumption (*People v. Profit*, 2012 IL App (1st) 101307, ¶ 19).

¶ 28     Kemp argues that the presumption is rebutted where the record shows that postconviction counsel failed to comply with the second and third requirements of Rule 651(c), that he examine the record of the trial proceedings and make any amendments to his *pro se* petition necessary to adequately present his claims. Specifically, Kemp contends that if Peterburs had sufficiently reviewed the trial record he would have understood that trial counsel failed to object to the State's questioning of McGee on *direct* examination about McGee's prior consistent statements in his videotaped statement. Thus, Peterburs should have amended Kemp's *pro se* petition to include a claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the State's questioning of McGee on direct examination about McGee's prior consistent statements. We agree with Kemp in both respects.

¶ 29     When postconviction counsel does not adequately complete the duties mandated by Rule 651(c), the limited right to counsel conferred by the Act cannot be fully realized. *People v. Addison*, 2023 IL 127119, ¶ 33.  However, Rule 651(c) does not require postconviction counsel to comb the record for additional claims beyond those raised in the petitioner's *pro se* petition. *People v. Rials*, 345 Ill. App. 3d 636, 641 (2003).

¶ 30     The State argues that the record demonstrates Peterburs actively engaged with Kemp's case

by filing a supplemental petition that expanded upon and supplemented Kemp's *pro se* petition. In this supplemental petition, Peterburs alleged that trial counsel was ineffective for eliciting McGee's prior consistent statement during cross-examination and failing to request a limiting instruction for the jury regarding Savarino's prior inconsistent statements, and that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on appeal. These additional claims indicate that Peterburs reviewed the trial record, identified potential avenues of relief, and took affirmative steps to strengthen Kemp's petition. See *Profit*, 2012 IL App (1st) 101307, ¶ 23 (holding that Rule 651(c) requires counsel to review the record, consult with the defendant, and shape the petition into a proper legal form).

¶ 31    However, the record shows that the State elicited McGee's prior consistent statement during direct examination. During the State's direct examination of McGee, he was asked:

> "Q. Who did you tell the investigators, on videotape, that you committed the crime with on June 17th of 2000?
>
> MR. KLOAK (Defense Counsel): Objection. Leading
>
> A: Yes
>
> THE COURT: Overruled.
>
> Q: Who did you tell the investigators, on videotape, that you committed the crime with on June 17 of 20000?
>
> A. Demetrius Kemp and Oscar Patton.
>
> Q. And that is Demetrius Kempt (sic) who is present in court today?
>
> A. Yes.
>
> Q. And that statement was given to investigators on the day of your arrest, is that correct?
>
> A. Yes."

Later in its direct examination of McGee, the State asked:

"Q. And was that the same videotaped statement that you named Demetrius Kemp and

Oscar Patton as two people involved in the crime on June 17th of 2000?

MR. KLOAK (Defense Counsel): Objection, again. Leading.

THE COURT: Overruled. What was the answer?

[McGee]: Yes."

Thus, it was the State, not defense counsel that elicited McGee's prior consistent statements implicating Kemp in violation of Illinois Rules of Evidence 613(c) (eff. Oct. 15, 2015), which, with certain exceptions, prohibits the introduction of a prior consistent statement as inadmissible hearsay. When the State introduced McGee's prior consistent statement during direct examination, defense counsel objected, but not under Rule 613 or otherwise on hearsay grounds.

¶ 32     There is no requirement that postconviction counsel must amend a *pro se* postconviction petition. *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991). But postconviction counsel must comply with Rule 651(c). See *People v. Suarez*, 224 Ill. 2d 37, 42 (2007) (Rule 651(c) requires counsel to make amendments that are necessary to adequately present the defendant's claims). Kemp's postconviction petition alleged that *the trial court* erred in allowing McGee's prior consistent statements. In his supplement to the postconviction petition, postconviction counsel alleged that Kemp received ineffective assistance of appellate counsel when he did not argue that trial counsel provided ineffective assistance by inviting McGee's prior consistent statement in cross examination. However, the record clearly shows it was the other way around, that the State elicited the prior consistent statement on direct examination and defense counsel failed to raise the proper objection. Consequently, the presumption created by postconviction counsel's filing of the Rule 651(c) affidavit–that counsel reviewed the relevant portions of the record–is rebutted. In addition, Kemp has

rebutted the presumption that counsel amended Kemp's *pro se* petition to adequately present his issues, specifically that the State elicited McGee's prior consistent statements in violation of Rule 613(c) and defense counsel failed to raise the proper objection.

¶ 33　We hold that, under this trial record, reasonable assistance of counsel under the Act and Rule 651 requires that postconviction counsel amend the petition to invoke the rule of evidence that squarely applies here. Therefore, we are required by *People v. Addison*, 2023 IL 127119, ¶ 44 ("[p]ostconviction counsel did not comply with Rule 651(c)" and that, accordingly, the defendant had "rebutted the presumption of reasonable assistance that arose from postconviction counsel's Rule 651(c) certificate") to reverse and remand for further second stage proceedings. On remand, Kemp is entitled to new counsel who, after complying with the responsibilities in Rule 651(c), shall file the required certificate and, thereafter, file an amended petition. *People v. Burns*, 2019 IL App (4th) 170018, ¶ 3. We express no opinion on whether Kemps's claim has merit. *Addison* makes clear that "it is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651(c) by shaping the claims into the appropriate form." *Addison*, 2023 IL 127119 ¶ 42.

¶ 34　　　　　　　　　　　　　　　CONCLUSION

¶ 35　For the reasons stated, we reverse and remand for further proceedings consistent with this order.

¶ 36　Reversed and remanded.

No. 1-23-1256